## CONGER v. COTTON.

1. CHANCERY PRACTICE : *When there is jurisdiction of one matter, all will be disposed of.*

When Chancery once obtains jurisdiction of a matter in controversy it will retain the cause for the settlement of all rights between the parties growing out of and connected with the subject-matter, whether legal or equitable, so as to do complete justice, and may even give damages, for compensation, which it could not do if they were the principal object of the suit.

2 DEMURRER : *Suit brought in wrong forum.*

That an action at law has been brought in equity is no ground for demurrer. The error should be corrected by motion to transfer to the proper docket.

Conger v. Cotton.

3. PRACTICE: *Forum, when equitable cross-bill filed.*
  When a defendant files a cross-bill, setting up equitable grounds for relief, to a complaint in equity which should have been brought at law, the case should proceed in equity.

4. SAME: *Amending certificate to depositions.*
  There is no error in allowing an officer to amend his certificate of the taking of depositions so as to conform to the facts, after it is filed in Court.

5. SAME: *Amount of proof required when answer responsive to complaint.*
  The rule that when an answer is responsive to the complaint it requires two witnesses, or one with strong corroborating circumstances, to overturn it, does not obtain, under the code practice.

6. SAME: *Evidence: Testimony of a party.*
  The testimony of a party taken subject to the test of a cross-examination is a different thing and of a higher nature, than sworn allegations in pleading, and is sufficient when unimpeached, and credible, to sustain a decree in the absence of evidence on the other side.

7. STATUTE OF FRAUDS: *Assumption by partner of debts due to the firm.*
  If, upon the close of a partnership, one partner takes to his own use a portion of the assets, whether choses in action or anything else, on an oral agreement to account to his copartners for a definite share, it is a separate and direct agreement, on a new consideration, and not within the statute of frauds.

APPEAL from *Yell* Circuit Court in Chancery.

Hon. T. W. POUND, Chancellor.

### STATEMENT.

On the twenty-sixth of March, 1875, W. E. Cotton filed in the Yell Circuit Court his complaint in equity against the appellant, Thomas C. Conger, alleging, in substance, that on the eighth of January, 1872, the plaintiff and defendant, and Jacob Conger and Claiborne Cotton, were equal partners in a steam mill in Yell county, under the firm name of T. C. Conger & Co. That on that day plaintiff bought the interest of appellant in said mill, for $1000, of which he paid, in cash, $300, and thereupon appellant delivered

to him his entire one-fourth interest in said mill. On the thirteenth of the month the plaintiff executed to appellant his note for the balance of the purchase-money—seven hundred dollars—and, to secure its payment, executed to him a mortgage upon real and personal property in Yell county, describing it, and including his interest in the mill, to be void upon payment of the seven hundred dollars, which were to be paid as follows:  $300 in lumber, at $10 per thousand feet, upon demand; the balance, $400, to be paid as far as could be, out of plaintiff's interest in the accounts due the firm of T. C. Conger & Co., which should be collected by the first day of July, 1872; and the balance of the $400, if any, to then be paid in cash.

The mortgage authorized the mortgagee to take possession and sell, upon default of payment, as stipulated. By the first day of July, 1872, the plaintiff had delivered to the defendant and others, at his request, 55,032 feet of lumber, with the express understanding and agreement with defendant that it should be credited to the notes and mortgage, at $10 per thousand feet. Soon after the execution of the note and mortgage said Claiborne Cotton transferred to plaintiff his entire fourth interest in the partnership accounts due and to become due to said firm of T. C. Conger & Co., whereby plaintiff became entitled to one-half of the proceeds of said accounts when collected. That the defendant collected on said accounts $412, but refused to account to plaintiff for any portion of it, but converted the whole to his own use, instead of applying plaintiff's half to the note and mortgage, and the excess to plaintiff, as he should have done. The complaint further alleges that after plaintiff purchased the mill and executed the note and mortgage, the defendant assumed the payment of large amounts for other persons who were at that date indebted to said firm of T. C.

Conger v. Cotton.

Conger & Co., and promised and agreed to account to said plaintiff for one-half of said amounts assumed by him, which half amounted to the sum of $161.51, for which sum said defendant was indebted to him. He further alleged that he had paid off debts due from the firm of T. C. Conger & Co., at the date of his purchase, to the amount of $293, for the fourth of which the defendant was liable to him and had promisd to pay him. He had also paid defendant $27 to be credited on said note; and said defendant had also collected other sums due to the plaintiff, and had received and appropriated to his own use divers debts and large amounts of lumber without accounting to plaintiff for any portion of them. He is unable to state the amounts so received and appropriated, and asks that the defendants be required to disclose the amounts and pay them over to plaintiff.

Plaintiff further alleges that the amount so paid by plaintiff for the defendant, and assumed by the defendant, and the several amounts in lumber and cash received by him and not accounted for, which are positively known to plaintiff, exceed in the aggregate the amount due on said note and mortgage by the sum of $315.75. He alleges that said note and mortgage have been paid for more than three years, but the defendant refuses to deliver up the notes, or to satisfy and cancel the mortgage, and also refuses to pay to plaintiff the $318.75 due to him; and refuses to make any settlement as to the matters in the complaint set forth.

Prayer, that the defendant discover and account as to the various items set forth in the complaint; that on final hearing he be decreed to deliver up said note and mortgage to the plaintiff, and pay him the $318.75 balance due him, and for general relief.

The mortgage was exhibited with the complaint. Exhib-

19—37

its of the debts assumed by the defendant, those collected by him, and of the partnership debts paid by the plaintiff, and of the lumber received by the defendant, were also filed with the complaint.

Appellant demurred to the complaint, because the plaintiff's remedy, if he had any, was at law, and Chancery had no jurisdiction, and the complaint was insufficient to entitle the plaintiff to any relief.

The demurrer was overruled, and the appellant answered.

He admits the partnership as alleged; the sale of his interest in the mill to the plaintiff, upon the terms stated; the payment of $300, and the execution of the note and mortgage for the balance—$700. Denies that he assumed to pay any person's indebtedness to the firm, and if he did, pleads the Statute of frauds, on the ground that the promise was not in writing. Denies that he promised to account to plaintiff for one-fourth of the debts of the firm, which plaintiff might pay off, and if he did, pleads the Statute of frauds as to this also, and says if plaintiff paid off such debts, it was with partnership funds. Says the partnership had never been settled up. And denies the other allegations in the complaint—claims a balance due him from the plaintiff of four hundred dollars, and interest, and by cross-complaint asks for a foreclosure of the mortgage to pay it.

The plaintiff answered the cross-complaint, denying any balance due to the defendant, re-asserting that the whole debt had been fully paid, and repeating the prayer of his original complaint.

During the progress of the cause, the defendant filed a motion to suppress certain depositions, because the certificate of the officer taking them did not show that the witnesses were properly sworn, nor that their depositions were taken at the time specified in the notice. Thereupon the

plaintiff asked a rule upon the officer to amend his certificate to conform to the facts; which was granted by the court, and the officer appeared and amended the certificate, showing that the witnesses were duly sworn, and the depositions were taken at the time specified in the notice; and the motion to suppress was then overruled.

Upon the hearing, the court held that the Statute of frauds did not apply to the defendant's promises; that the plaintiff's note and mortgage had been fully paid, and discharged, and the defendant was indebted to the plaintiff in the sum of $359.95, and decreed that the note and mortgage be cancelled, and the plaintiff recover of the defendant the sum of $359.95, and cost of the suit. Defendant appealed

*W. N. May*, for appellant:

1. The demurrer should have been sustained. *Story Eq. Pl.*, secs. 472, 473, 479, 482; *Ky. Code, p.* 353, *note* "*G.*," *p.* 359, *note* "*A.*"

2. As to when Courts of Chancery have jurisdiction in matters of accounts. See 8 *Ark.*, 57; 9 *Ark.*, 501; 14 *Ark.*, 50. Plaintiff's remedy was at law, there being no complication of accounts.

3. The promises were not in writing *Sec.* 2951 *Gantt's Digest; Hughes* v. *Lawson*, 31 *Ark.*, 613, and cases cited.

4. The *onus* was on appellee to prove payment of the note and mortgage.

5. The answer being responsive to the allegations of the bill, and sworn to, should be *taken as true*, unless contradicted by two witnesses, or one with corroborating circumstances. 8 *Ark.*, 10; 12 *Ib.*, 391; 13 *Ib.*, 593; 18 *Ib.*, 118; *Ib.*, 124; 19 *Ib.*, 166; 20 *Ib.*, 309.

6. The motion to suppress the depositions of Cotton and

Hensley should have been sustained, and the notary should not have been allowed to amend his certificate. *Fancher* v. *Armstrong*, 5 *Ark.*, 187.

7. The decree was for more than complainant asked, or proved.

*S. R. Allen*, for appellee:

1. A bill in equity is the proper proceeding to compel an accounting, and compass the cancellation of a note and mortgage outstanding.

The Statute of frauds does not apply—it was a promise by one partner to account to another for his portion of the assets of the firm. This he was bound to do, without any promise or agreement.

2. The certificate of the notary was not a part of the deposition, and the court properly allowed the notary to amend.

3. The decree is in accordance with the evidence, and the prayer of the bill.

### OPINION.

1. CHAN-
CERY
PRACTICE:
When
there is ju-
risdiction
of one
matter, all
will be dis-
posed of.

EAKIN, J.   The bill, considered simply as a suit to recover a balance due complainant for money advanced for lumber, and for money had and received by defendant to the use of complainant, did not present such a case of mutual accounts, as to require the interposition of a Court of Equity. The relief, as to that much, might have been effectually rendered at law. But the bill further seeks to have complainant's note delivered up and cancelled and to have an outstanding mortgage declared satisfied. This was the peculiar province of a Court of Equity, and draws to it all legal relief connected with the subject matter. The well settled rule is, that where, by reason of any equitable element, a Court of Chancery acquires jurisdiction of a matter in controversy, it

Conger v. Cotton.

will retain it for the settlement of all rights between the
parties, growing out of and connected with the subject mat-
ter, whether legal or equitable, so as to do complete justice,
and may even adjudge damages for compensation, which it
could not do, if they were the principal object of the suit.

If it were true that the action should have been brought 2, DEMUR-
at law, the objection should not have been made by demurrer, RER:
but by motion to correct the error made at the time of filing Suit bro-
the answer. *Gantt's Digest, Sec.* 4464. This, defendant ught in
could not have done, because he made his answer a cross wrong
bill, setting up equitable grounds for relief, and which re- forum.
quired the cause to be retained on the equity docket. This 3. Forum:
cause was, therefore, properly heard and determined in Where
equity. cross-bill
to legal
action.

There was no error in allowing the notary, who took the 7. PRAC-
deposition, to amend his certificate in accordance with TICE:
the facts. Whatever may be the case with regard to the Amend-
proof and acknowledgment of deeds, where rights of third ing certifi-
parties may be affected, there is no more reason for refusing cate to de-
to allow a commissioner to amend his certificate of the taking positions.
of depositions than there would be for refusing to allow a
sheriff to amend a return. A sheriff not only may do that, but
may be compelled to do it. As amended, it showed that the
depositions had been taken at the time and place stated in
the notice, and that the witnesses were duly sworn. It was
not necessary to repeat the form and substance of the oath
administered. In all material matters, the certificate cor-
responds with the directions of *Gantt's Digest, Sec.* 2580.
The motion to suppress the depositions was properly over-
ruled.

The proof was all upon the part of complainant and fully 5. SAME:
sustains all the allegations of the bill. It is not only unim- Evidence:
peached, but impresses the mind with its truth in the absence Testimo-
of all effort on the part of the defendant, either by cross ny of a
party.

examination or by counter testimony, to destroy its force or explain it.    He does not himself offer his own evidence to sustain the denials of his answer.    His counsel contends here that the exact amounts of the account are only proven by the testimony of the complainant, and that the answer, being responsive to the allegations of the bill, should overbear the testimony of one witness, without strong corroborating circumstances.    It requires no citation of authorities to show that such was the old rule in equity.    But, save as to amounts, there was in this case very strong corroboration by other witnesses—quite sufficient under the rule, if it were applicable under the code.    But it is not.    The system has been changed.    Formerly the complainant, without any oath of his own (save in exceptional cases provided by Statute), drew the defendant before the chancellor to probe his conscience.    He made his adversary his own witness, and being allowed to do so, contrary to the course of common law, he was held bound by the answer unless he could disprove it by still stronger countervailing evidence.    This was reasonable.

The new system proceeds on different principles.    All parties are allowed to testify, and bills of discovery are almost wholly abolished.    They are no longer necessary where either party may testify for himself, and make his adversary a witness.    All pleadings are required to be verified on both sides.    The probing of conscience has been applied to both with equal severity before issues are made.    The pleadings only make the issue, leaving the preponderance of testimony only necessary for him who has the onus of showing the fact from which the equity arises.    His own testimony taken subject to all the tests of cross examination is a different thing from sworn allegations in pleading.    It is of a higher nature, being more deliberate, cautious and plain, besides being in his own language, without the forms

of pleading. It is enough when unimpeached and credible, to sustain a decree, in the absence of evidence on the other side. In short, the rule urged upon the court, has in the Code States, passed out of equity practice, and belongs only to the history of Equity Judicature. (*See Gantt's Digest, Section* 4591).

The matters in controvesy grew out of the old partnership transactions of T. C. Conger & Co., of which firm complainant, defendant, and two other persons, to-wit: Jacob Conger and Claiborne Cotton, were the component members. Claiborne Cotton's interest appears, both from the bill and his own deposition, to have passed to the complainant; but no notice whatever, in the suit, is taken of the interest of Jacob Conger. The defendant did not, in any proper way, ask that he be made a party, or object to proceeding without him. The question still arises, whether the court should have proceeded in his absence. The test of the duty of the Chancellor, in such cases, is found in *section* 4481 *of Gantt's Digest*, which provides that: "The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights. But, when a determination of the controversy *between the parties before the court cannot be made*, without the presence of other parties, the *court* must order them to be brought in." The meaning of this is plain; and, in most cases, easy of application. A Chancellor should not allow his own time, and that of the court, to be consumed in doing a vain thing, which may be unsettled by the subsequent assertion of equities on the part of others not bound by the decree. Whenever it is apparent, from the pleadings, or seems probable, that there are other parties interested in the subject matter, whose rights, when asserted, might make a decree as to the parties before it, different from that which might appear proper in a con-

troversy between themselves alone, then a court should not proceed until all parties interested are present, that the ultimate rights, on final result, of the parties before it, as to each other, may be permanently determined. But if it appears that the assertion of other equities in the subject matter, by third parties, could not alter the liability of the parties before the court, as between themselves, then, although such third parties may be properly brought in, they are not absolutely necessary. This is such a case. It is not a bill to wind up and settle a partnership, and marshal the assets, and appropriate them in due order, first to have payment of debts, next to the adjustment of equities between the partners, and then for partition of the remainder. That would have required all the partners to be present, in order to determine how much either one of them should pay the other. But here, it seems, that, by agreement, the old partnership was closed in 1872, and there are no outstanding debts of estimable importance. It appears that complainant is entitled to one-half of the old assets, and defendant and Jacob Conger each to one-fourth. If the defendant is held liable to complainant for one-half of the debts to the firm, which he collected or used, and for one-fourth of the old debts of the firm, which complainant paid, that does not touch the rights of Jacob Conger in any way, and the amount due complainant, from defendant, cannot be altered by any assertion hereafter of Jacob Conger's right against either, nor by the assertion of complainant's rights against him for one-fourth of the debts paid. There is no distribution in this case of assets on hand. What remains is a personal matter between Jacob and each of the others, which may be independantly settled, without disturbing this decree. Certainly it would have been better, and more consonant with the general purpose of Chancery, to close all litigation in one suit, if the Chancellor had directed Jacob Conger to be

Conger v. Cotton.

brought in, that he might disclaim or assert his rights, but it was not imperative. The court might, and did, determine the controversy *between parties before it*, without prejudice to the rights of Jacob Conger.

The appellant contends that his agreement to account to complainant for a proportional part of the accounts, which he took and *assumed*, was within the Statute of frauds, and was not in writing. This position is not tenable. If, on a close of partnership affairs, one partner is allowed to take, for his own use, a part of the assets, whether choses in action, or anything else, on an agreement with his copartners to account to them for a definite share, it is a separate and direct agreement, on a new consideration. It becomes to the other partners, then, a matter of indifference, whether the debts are collected or not. They belong to the partner taking them, and he may collect them, or use them in trade, or to satisfy his own individual debts ; or he may release them wholly. It amounts to nothing more nor less than a purchase of the interest of others in property belonging to them jointly. The Statute of frauds has no application.

The decree is in excess of the amount proved, but in all other respects, clearly just and equitable. The excess was probably the result of an error in calculation, or of a clerical error in the entry. However that may be, it is, nevertheless, an error which sustains the appeal, at least to the extent of carrying the costs of this court against appellee, and for the correction of excess.

Enter a decree here for the amount of $329.05, in favor of the complainant below, with interest at 6 per cent. from the second day of July, 1872. Let the appellee be ordered to pay the costs of the appeal, and remand the cause to the court below for execution.