SCOTT *v.* MOORE.

Opinion delivered February 15, 1909.

1. STATUTE OF FRAUDS—AGREEMENT TO PAY ANOTHER'S DEBT.—An oral promise by a grantee of land to pay a debt of the grantor to a third person as part of the consideration for the conveyance is not within the statute of frauds. (Page 324.)

2. ESTOPPEL—REPRESENTATION.—One who makes to another a representation as to a matter of fact that is peculiarly within his knowledge cannot say that the other had opportunity to know that the representation was false. (Page 325.)

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict based upon legal evidence will be conclusive on appeal, though it appears to be against the weight of the evidence (Page 326.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*Mayes & McDonald,* for appellant.

Ground of suspicion of fraud is not enough, it must be proved. 9 Ark. 485; 11 *Id.* 378; 17 *Id.* 146; 68 Me. 200; 72 *Id.* 415; 67 Pa. 459; 40 Ark. 417. The law requires each contracting party to be vigilant and exercise a due degree of caution. 7 Ark. 165. While in equity it is sufficient to show facts from which fraud may be presumed, yet at law fraud must be proved and expressly found. 33 Ark. 425. A false representation, to be actionable, must not only mislead, but it must be made fraudulently and with that intent. 38 Ark. 334. If the statement is known by the other party to be false, it can have no effect upon his decision. 8 Ark. 146. This court will carefully weigh the legal sufficiency of the evidence upon which a verdict has been rendered by a jury. 70 Ark. 136; 67 *Id.* 47; 57 *Id.* 461. The evidence is insufficient, and the motion for a new trial should have been sustained. 70 Ark. 136; 67 *Id.* 47; 57 *Id.* 461. Notice to one is notice to his client. 21 Ark. 22; 75 *Id.* 343. A conveyance by quitclaim deed is insufficient to put a man on inquiry. 23 Ark. 731; 50 *Id.* 327; I Coldw. 456; 3 Hayne, 147; 9 Am. Dec. 736. For the purpose of ascertaining the true intent of the parties, the court will consider all the circumstances connected with the transaction. 13 Ark. 112.

*E. S. McDaniel, H. A. Dinsmore,* and *Williams & Buchanan* for appellee.

A man who has deceived another should not be permitted to say, "You ought not to have believed me," or "You yourself have been guilty of negligence."   22 R. I. 18; 130 Ind. 288.

FRAUENTHAL, J.   This is an action brought by the appellant, J. P. Moore, against the appellee, J. P. Scott, to recover damages on account of fraud and deceit, and growing out of the sale of a tract of land.

On September 11, 1903, J. P. Moore was and for a number of years prior thereto had been the owner of a tract of land containing 110 acres; and on said day sold and conveyed the same to J. P. Scott for the agreed price of $5,500.   Prior to that time and on October 23, 1902, J. P. Moore had borrowed from J. P. Hight a sum of money, for which he had executed to Hight his note due 12 months after its date, and to secure said note executed a mortgage to Hight on said land; and on the 11th day of September, 1903, the note secured by the mortgage amounted to $1,200.   On September 11, 1903, when Moore sold the land to Scott, it was agreed by them that the purchase money of $5,500 should be paid in the following manner:   Scott paid to Moore the sum of $300 in money, and assumed to pay the note which had been executed by Moore to Hight, and which was secured by the mortgage on the land, and which at the time amounted to $1,200; and for the remainder of $4,000 Moore should retain a vendor's lien on the land payable with interest in five years.   The deed executed by Moore to Scott recited that the $1,500 was paid down, and a vendor's lien was retained for the $4,000; but as a matter of fact only $300 was paid in money, and the balance of said $1,200 was paid by the assumption by Scott of the said $1,200 note and mortgage executed by Moore to Hight.

On January 9, 1904, Scott made a payment of $301.80 on the Hight note and mortgage, and made no further payment.   After the sale of the land by Moore to Scott, no demand was made of Moore for the payment of any interest or principal of the note and mortgage executed by him to Hight.   Moore began to make inquiries as to whether Scott had paid the note and mortgage, and in April, 1904, Scott assured Moore that he had paid the note and

mortgage executed to Hight. Scott went into possession of the land immediately upon his purchase thereof, and remained in possession of same continuously to the 6th of August, 1907, when he re-conveyed the land to Moore. Prior to August 6, 1907, some disagreement arose between Moore and Scott as to the time when the $4,000 should have matured and as to the payment of interest thereon. On August 6, 1907, the parties entered into a written contract by which Scott agreed to sell and convey the land back to Moore. At that time Moore claims that he understood and believed that the note and mortgage executed by him to Hight had been paid by Scott. Relying on the above representation which had been made by Scott to him to that effect, he agreed to pay to Scott on the re-purchase of the land the sum of $750 in cash and to release and satisfy his claim against Scott for $4,000 and interest due on the land. The written contract states that Scott conveys back to Moore the land for that consideration, and also states that Scott covenants that the property is not covered by any mortgage or lien of any kind since he has owned it. And the deed executed in pursuance of said contract on August 6, 1907, by Scott to Moore recites that Scott covenants that he has not mortgaged said land nor placed a lien of any kind on it since he had owned it. The deed executed by Scott to Moore, except containing the above covenant, is a quitclaim deed. Sometime after the re-sale and re-conveyance of said land by Scott to Moore, the appellee learned that Scott had not paid the note and mortgage which he had executed to Hight.

Claiming that he had been induced to buy back the land by the false representations made by Scott to him of the payment of the Hight note and mortgage and the fraudulent concealment of its non-payment, Moore instituted this suit against Scott for damages.

The defendant denied making any statement or representation that he had paid the Hight note and mortgage, and also claimed that he was not legally liable to pay the Hight note under the statute of frauds, which he pleaded; and claimed that in the re-sale of the land by him Moore agreed to pay and re-assumed the payment of the Hight note and mortgage. Testimony was introduced by the parties tending to prove their respective contentions as above set forth. The jury returned a verdict in

favor of appellee, Moore, for $1,434.16, and from the judgment rendered thereon Scott prosecutes this appeal.

1.   It is contended by the defendant that he was not legally liable for the payment of the note and mortgage executed by Moore to Hight under the statute of frauds for the reason that his agreement to pay same is an undertaking to pay the debt of another and was not in writing signed by him. The agreement by Scott to pay the Hight note was not a collateral undertaking, and does not fall within the statute of frauds (Kirby's Dig., § 3654). The assumption by Scott of the payment of the note given by Moore to Hight was a part of the consideration which Scott agreed to pay for the land when he bought the same from Moore, and was therefore based on a new consideration, and was an original undertaking.

In *Kurtz v. Adams,* 12 Ark. 174, it is said: "But where, distinct from the original liability, there is a new and superadded consideration for the promise moving between the party promising and him to whom the promise is made, in such case it is an original undertaking." And so a parol promise to pay the debt of another is not within the statute of frauds when it arises from some new consideration of benefit or harm moving between the newly contracting parties. *Conger v. Colton,* 37 Ark. 286; *Chapline v. Atkinson,* 45 Ark. 76; *Long v. McDaniel,* 76 Ark. 292. And this principle applies to an oral promise by a grantee of land to pay a debt of the grantor, as part of the consideration therefor. By adopting this particular mode of discharging his own debt to the grantor, he in effect makes the debt of the latter his own, and thereby he is under a legal liability to the grantor to pay the same. 20 Cyc. 174.

So, the parol agreement made by Scott, when he bought the land in 1903 from Moore, to pay the Hight note and mortgage as part of the consideration for the land was a legal and binding obligation. And in 1907, when he re-sold the land to Moore, this contract to pay that indebtedness was still subsisting. He had never discharged that obligation. The undisputed testimony is that Scott agreed and became legally liable to pay the Hight note. Therefore it has become incumbent on Scott to show that at the time he re-sold the land to Moore in 1907 he had paid the Hight note, or that Moore had re-assumed to pay it. And there is no

evidence to show either that Scott had paid the Hight note and mortgage, or that Moore assumed or agreed to pay it at the time of the re-sale in 1907.

2. It is contended by counsel for defendant that, even though Scott made a false representation of the payment of the Hight note, still defendant is not liable in this action, for the reason that Moore had notice by the record of the mortgage that same was not marked paid, and that by the exercise of reasonable diligence Moore could have found out that the note and mortgage had not been paid. But in this case Moore had a right to rely on the statement of Scott, and was not required to make further inquiry. As to whether he had paid the note was a matter peculiarly within the knowledge of Scott, and he is responsible for any false statement relative thereto, if it resulted to the injury of Moore.

As was said in *Gammill* v. *Johnson*, 47 Ark. 335, "when the representation is made of a fact that has nothing to do with opinion, and is peculiarly within the knowledge of the person making it, the one receiving it has the absolute right to rely upon its truthfulness, though the means of ascertaining its falsity were fully open to him. It does not lie in the mouth of declarant to say it was folly in the other to believe him."

And by the weight of authority ordinary prudence and diligence do not require a person to test the truth of representations made to him by another as of his own knowledge and with the intention that they should be acted upon, if the facts are peculiarly within the other party's knowledge or means of knowledge, though they are not exclusively so, and though the party to whom the representations are made may have an opportunity of ascertaining the truth for himself. 14 Am. & Eng. Ency. Law (2d Ed.), 120.

3. It is urged that error was committed by the lower court in the giving and in the refusing to give certain instructions. It would serve no useful purpose to mention in detail these several exceptions. The court gave a number of instructions which fully and correctly presented the law of this case. These instructions presented to the jury the essential elements of liability for fraudulent representations and deceit as applicable to the facts of this case. The instructions covered every phase of the case

and presented to the jury the law applicable to the different contentions of the parties and in conformity with the law in such cases as announced by this court in former decisions. *Hutchinson* v. *Gorman,* 71 Ark. 305; *Mason* v. *Thornton,* 74 Ark. 46.

It is also urged that the lower court committed error in the admission and rejection of certain testimony. But after a careful examination of these exceptions we do not think any of them is well taken. The issue of fraud and deceit was clearly and fully made, and all competent testimony on that issue was correctly and fully admitted.

It is also urged that the verdict of the jury is contrary to the evidence in the case. It is true that the evidence in this case is conflicting; but we cannot say that there is no legal evidence in the case to support the verdict of the jury. This court has often announced the doctrine that merely because the appellate court differs with the jury as to the preponderance of the evidence, the verdict will not be disturbed; and, although it seems to be against the preponderance of the evidence, still, if it is supported by legal evidence, it will be conclusive on appeal. *St. Louis, I. M. & S. Ry. Co.* v. *Osborn,* 67 Ark. 399; *St. Louis S. W. Ry. Co.* v. *Byrne,* 73 Ark. 377; *McClintock* v. *Frohlich,* 75 Ark. 111; *Davis* v. *Trimble,* 76 Ark. 115.

In this case there is legal evidence to sustain the verdict of the jury. The judgment is affirmed.