FAULKNER v. CRAWFORD.

Opinion delivered May 24, 1915.

1. APPEAL AND ERROR—VERDICT OF JURY—CONCLUSIVENESS.—The jury are the judges of the credibility of the witnesses and the weight to be given to their testimony; it is their duty to reject that part of the

testimony which they believe to be false and to receive that part which they believe to be true; and where, in the exercise of these rights the jury found for the plaintiff, their verdict will not be disturbed on appeal, although there is a sharp conflict in the testimony.

2. BROKERS—SALE OF REAL ESTATE—COMMISSIONS—STATUTE OF FRAUDS.— B. agreed to exchange his lands and certain personal property in Arkansas, with F. for F.'s farm in New Mexico, and as a part consideration for the exchange F. agreed to pay B. certain sums of money and also the real estate broker's commission due one C. who had brought about the trade. *Held,* under the facts, F. did not agree to pay the debt of another, but did promise to pay his own, and the promise is not within the statute of frauds, and such agreement is enforceable.

3. TRIAL—IMPROPER VERDICT AS TO AMOUNT—ACTION OF TRIAL COURT.—C. sued F. for real estate broker's commissions. The evidence showed F. to be liable in the sum of $1,400. The jury returned a verdict of $700, whereupon the court said, "he is entitled to all of the commission or he is not entitled to any of it," and sent the jury back to reconsider their verdict. Subsequently, the jury returned into open court with a verdict for C. against F. in the sum of $1,400. *Held,* no error was committed by the trial judge, there being no evidence to warrant a verdict for a smaller amount than $1,400, if plaintiff was entitled to anything at all.

4. TRIAL—IMPROPER VERDICT—DUTY OF COURT.—It is the duty of the trial court to set aside a verdict which is clearly against the weight of the evidence.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

*George M. Chapline* and *Vaughan & Akers,* for appellant.

1. The evidence does not support the verdict. Improper evidence was adduced. 95 Ark. 233, 238; 74 *Id.* 300, 256, 259, 260; 102 *Id.* 435, 438.

Beadle was never released, and it is not shown that Faulkner assumed the payment of the commission. 102 Ark. 407, 409, 410.

2. Even if Crawford orally assumed the payment of Beadle's debt, the promise is within the statute of frauds. 102 Ark. 407.

3. It was error to refuse to receive the first verdict. 40 N. Y. Sup. Ct. 271; 22 Enc. Pl. & Pr., p. 970, par. 2;

4 Watts (Pa.) 357. The verdict should have been accepted or set aside and a new trial awarded. Kirby's Dig., § § 6203-4, 6209; 86 Ark. 570, 577, 578; 42 Atl. 228; 29 S. W. 172.

*Trimble & Williams,* for appellee.

1. The testimony of Crawford and Beadle support the verdict.

2. The statute of frauds does not apply. The commission was part of the purchase price of the land. Faulkner simply agreed to pay a debt of his own for a valuable consideration. 29 Am. & Eng. Enc. Law (2 ed.) 914; 89 Ark. 321, 324; 96 Ark. 46; 103 Ark. 219; 83 Ark. 258; 25 L. R. A. 264; 76 Ark. 292; 102 *Id.* 407, 409.

3. The verdict was properly recommitted to the jury. 38 Cyc. 1893-4; 106 S. W. 1091; 38 S. W. 159, 165; 37 *Id.* 544; 104 *Id.* 606, 615; 86 Ark. 570.

HART, J. Dr. C. L. Crawford sued Francis R. Faulkner and Oscar Beadle to recover a real estate broker's commission. The case was tried before a jury, which returned a verdict for the plaintiff against the defendant, Faulkner, and from the judgment rendered Faulkner has appealed.

The facts are as follows: The defendant, Beadle, in August, 1912, listed his farm and certain personal property on it with plaintiff, Crawford, for sale and agreed to pay him 5 per cent commission therefor. Doctor Crawford had formerly lived in Chaves County, New Mexico, and he wrote back there to defendant, Faulkner, asking him to interview a man named Gibbs and find out what were the chances of exchanging Gibbs' property in New Mexico for Beadle's property in Lonoke County, Arkansas. Faulkner replied that Gibbs had sold his property but that he himself had a farm which he might trade to Beadle for his land. Upon receipt of this letter, Doctor Crawford told Beadle to go to New Mexico and examine Faulkner's land. Beadle went there, and after remaining eight or ten days returned to Arkansas with Faulkner. Faulkner stayed with Doctor Crawford and drove

about the country with him, looking at the lands of Beadle and other parties. After several days' negotiation, Beadle and Faulkner entered into a contract whereby Beadle exchanged his lands in Lonoke County, Arkansas, comprising about five hundred and twenty acres, for Faulkner's land in New Mexico, consisting of eighty acres. As a part of the consideration Faulkner agreed to pay Beadle fifteen thousand dollars in money, or to assume debts of Beadle's for that amount. For the purpose of fixing the commission which would be due Doctor Crawford, Beadle's lands were valued at twenty-eight thousand dollars and Doctor Crawford was to receive 5 per cent commission on that amount as his services for bringing about the exchange of lands between the parties. Both Doctor Crawford and Beadle testified that before the trade was made Faulkner agreed with Beadle that he would pay the commission to Doctor Crawford as a part of the consideration for the exchange of the land and that Doctor Crawford was notified of that fact. They also testified that after the exchange of land had been consummated, Faulkner said that he had agreed with Beadle that he would pay the real estate commission due Doctor Crawford. Faulkner testified in his own behalf, and denied in most emphatic terms that he had agreed with Beadle to pay the commission due Doctor Crawford. After the exchange of lands was made Beadle removed to New Mexico, and in behalf of Faulkner it was shown that Beadle stated to three persons after his arrival there that Doctor Crawford had come to him just before he left Arkansas and asked him to sign a paper stating that Faulkner had agreed to pay Crawford the commission on the trade and that he had declined to sign the paper because the statements contained in it were not true. Beadle denied that he had made this statement to the persons in New Mexico, and Doctor Crawford testified that he did not go to Beadle with such a paper for him to sign either just before he left Arkansas or at any other time.

(1) It is contended by counsel for the defendant that there is not sufficient evidence to warrant a verdict

against him.    They point to the fact that Crawford first
instituted suit in New Mexico to recover his commission
against both Beadle and Faulkner, and that Beadle in his
answer to that suit set up a statement of facts wholly at
variance with what he testified to in the present action.
Crawford took a nonsuit and afterward instituted the
present action.    It is true that the testimony of Beadle is·
not in all respects consistent with the matters set up in
the suit brought against him in New Mexico, but he ex-
plained that his answer to that suit was prepared by his
attorney.    It is also true that the force of Doctor Craw-
ford's testimony was somewhat weakened upon cross-ex-
amination.    Be that as it may, however, the testimony of
both Crawford and Beadle is to the effect that as a part of
the consideration for making the exchange of the lands
Faulkner agreed to pay the real estate commission which
was due Crawford for his services in bringing about the
trade between the parties.    The jury were the judges of
the credibility of the witnesses and the weight to be given
their testimony.    It was their duty to reject that part of
the testimony which they believed to be false and to re-
ceive that part which they believed to be true.    In the ex-
ercise of that right the jury found for the plaintiff and
under the settled rules of practice of this court we are not
at liberty to disturb their verdict.

(2)    It is next contended by counsel for defendant
that the oral agreement of Faulkner with Beadle to pay
the real estate commission which was due Crawford was
such an agreement to answer for the debt of another as
to be within the provision of the statute of frauds.    In
the case note to 12 American & English Annotated Cases,
page 1101, it is said:    "It is a well established rule that
a promise by a purchaser of real property to pay a debt of
the grantor to a third person as a part of the purchase
price of the property is not a promise to answer for the
debt, default, or miscarriage of another within the mean-
ing of the statute of frauds."    Numerous decisions from
many of the States are cited in support of the rule.    In 29
A. & E. Enc. of Law (2 ed.), page 914, it is said: "A prom-

ise by the purchaser of property and as a part of the consideration for the purchase, to pay a debt of the seller, or a promise to pay a claim of the seller against a third person is a promise to pay the purchaser's debt and not within the statute." See, also, *Scott* v. *Moore,* 89 Ark. 321. "It may indeed be stated as a general rule that wherever the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another." Parsons on Contracts, ninth edition, volume 3, star page 24. Thus it will be seen that this case has nothing to do with the statute of frauds. Beadle agreed to exchange his lands and certain personal property in Lonoke County, Arkansas, with Faulkner for his farm in Chaves County, New Mexico, and as a part of the consideration for the exchange of the land Faulkner was to pay Beadle certain sums of money and also the real estate broker's commission due Crawford. Under these circumstances, it is not the debt of another but his own debt which Faulkner promised to pay, and neither the fact that the payment was to be made to Crawford nor the fact that in paying his own debt he extinguished the debt of Beadle, nor the fact that the liability of Beadle continued the same after as before his undertaking brings it within the statute.

(3) The jury returned a verdict for the plaintiff against the defendant, Faulkner, in the sum of $700. The court, after hearing the verdict read, said to the jury: "He is entitled to all of the commission or he is not entitled to any of it." A member of the jury said: "Judge, we understood we could return a verdict for any amount from one dollar up." The court replied: "No, he is entitled to all of the commission or he is not entitled to any of it; you will retire and consider your verdict further." Subsequently, the jury returned into open court a verdict for the plaintiff against defendant, Faulkner, in the sum of $1,400.

(4) It is insisted by counsel for the defendant that the court erred in its remarks to the jury. It was the duty of the court to set aside the first verdict if it was clearly against the weight of the evidence. Both Doctor Crawford and Beadle testified that in fixing the commission the property of Beadle was valued at twenty-eight thousand dollars and that Crawford was to receive 5 per cent as his commission. The commission then would amount to $1,400. There is no testimony which would justify the jury in returning a verdict for a smaller amount. It is true that when Doctor Crawford first wrote to Faulkner about selling the land of Beadle for him he stated that Beadle had agreed to pay him 5 per cent commission therefor and that he would divide his commission with Faulkner for his assistance in procuring a purchaser for the lands. After this, however, Faulkner decided to exchange his lands for the lands of Beadle, and according to his own version of the matter he was not to receive any part of the commission which was due Crawford from Beadle. He did not claim at the trial that he was to receive any part of the commission due by Beadle to Crawford. He denied in most emphatic terms that he had agreed with Beadle to pay the commission due to Crawford. The jury have settled this disputed question of fact in favor of the plaintiff. There could be no controversy between them as to the amount of the commission which Doctor Crawford was to receive. The undisputed testimony shows that he was to receive fourteen hundred dollars if he was entitled to any amount. Therefore, the court did not err in telling the jury that he was entitled to this amount if he was entitled to any at all.

It follows that the judgment must be affirmed.