## MITCHELL v. KENNADY. (No. 9700.)*

(Court of Civil Appeals of Texas. Fort Worth. Dec. 3, 1921. Rehearing Denied Jan. 7, 1922.)

1. **Frauds, statute of ⊚⟿21—Agreement of contractor to pay commissions to broker of other party held not within statute.**

An agreement by a contractor, as part of the consideration of a drilling contract, to pay the commissons due a broker employed by the owners of the land, was not an agreement to answer for the debt of another within the statute.

2. **Contracts ⊚⟿9(1)—Uncertainty as to consideration immaterial if amount can be ascertained.**

An agreement by a contractor to pay a commission due a broker is not invalid because the amount is not specifically mentioned or agreed on if it appears that the amount could have been ascertained by inquiry.

3. **Brokers ⊚⟿85(6)—Evidence of an oral statement as to compensation held admissible, though not included in written contract.**

Evidence that the defendant, at the time of the negotiation of a drilling contract between the owners of the land and defendant, stated orally that he "would take care of K.," the broker employed by the owners of the land, held admissible, though such promise was not included in the written drilling contract; the two contracts being separate in their objects.

4. **Trial ⊚⟿29(2)—Remarks of court held proper under evidence.**

The act of the court in requesting that a certain portion of a deposition be reread to it, and in several times referring thereto, *held*, under the evidence, not to give such testimony such prominence as to constitute a comment by the court on the weight of the evidence.

5. **Brokers ⊚⟿74—Statement of defendant construed to be a promise to pay commission to broker of other party to contract.**

Where an owner of land, while negotiating a drilling contract with defendant, stated to defendant that he (defendant) would be required to pay plaintiff, a broker, whereupon defendant stated that he would "take care of" plaintiff, and the drilling contract was thereupon executed, defendant would not be permitted to say that he meant by the statement that he would defeat plaintiff's claim, and not actually pay it.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by M. H. Kennady against J. Burris Mitchell. From a judgment for plaintiff, defendant appeals. Affirmed.

Payne & Morris, of Fort Worth, for appellant.

Nicholson & Kent, of Fort Worth, for appellee.

CONNER, C. J. The appellee, M. H. Kennady, sued appellant, J. Burris Mitchell, in the Sixty-Seventh district court of Tarrant county to recover upon an alleged contract to pay commissions. The plaintiff, as Kennady will hereinafter be referred to, alleged, in substance, that in January, 1919, he had been employed by E. F. Ritchey and G. R. Ritchey, brothers, to secure for them a "drilling contract" on 220 acres of land situated in Stephens county; that it was understood that the Ritcheys were not to pay any commission, but that the plaintiff was to secure commission for his services in the matter from the purchaser or contractor; that, pursuant to such employment and understanding, the plaintiff in fact secured one E. W. Nye, who undertook to secure said drilling contract, and agreed to pay the plaintiff $7.50 per acre for such part of the land as he (Nye) should secure from the Ritcheys. It was further alleged that Nye failed to secure the drilling contract, but that he went to the defendant Mitchell, and took him to the Ritcheys, from whom he secured a drilling contract on 200 acres of the land. It was further alleged that at the time the Ritcheys awarded the drilling contract to the defendant Mitchell, upon the insistence of the Ritcheys, the defendant agreed to pay the plaintiff the commission that Nye had agreed to pay. It was alleged that the Ritcheys were acting as the agent of the plaintiff in thus securing his commission, for the recovery of which he prayed in the sum of $1,500.

The case was submitted upon the following special issue:

---

"At the time of or before the time of the execution of the drilling contract between the Ritcheys and the defendant, J. Burris Mitchell, did the defendant, J. Burris Mitchell, agree to pay to M. H. Kennady the commission of $1,500?"

This issue was answered by the jury in the affirmative, and no objection has been made to the form of its submission, nor has any attack been made upon the answer of the jury as unsupported by the evidence.

[1] The questions involved have been presented by assignments of error to the action of the court in overruling the general demurrer to the petition, in refusing certain special charges, to the introduction of certain testimony, to the refusal to give peremptory charges, etc. It is insisted that the petition and evidence show that the plaintiff's cause of action is predicated upon another contract which failed; that the contract, as alleged and proven, is in violation of the statute of frauds; that it appears not to have been included in the written contract between the Ritcheys and defendant, Mitchell; that the evidence shows that, at the time of the undertaking of the defendant to pay the commission, if any, no amount was agreed upon, and that therefore the contract must fail for want of certainty.

We think we must rule against appellant upon all of these contentions. In Nugent v. Wolfe, 111 Pa. 471, 4 Atl. 15, 56 Am. Rep. 291, it is stated as a general rule that—

"When the leading object of the promise or agreement is to become guarantor or surety to the promisee, for a debt for which a third party is and continues to be primarily liable, the agreement, whether made before or after, or at the time with the promise of the principal, is within the statute, and not binding unless evidenced by writing. On the other hand, when the leading object of the promisor is to subserve some interest or purpose of his own, notwithstanding the effect is to pay or discharge the debt of another, his promise is not within the statute."

See, also, numerous other cases to the same effect, cited in note 19, p. 899, § 470, of 1 Williston on Contracts.

In the case of Faulkner v. Crawford, 119 Ark. 6, 177 S. W. 35, it is distinctly held that an agreement by a purchaser, as part of the consideration for the sale of land, to pay the commission due a broker employed by the vendor, was not an agreement to answer for the debt of another within the statute of frauds.

The case of Myers v. Dean, 132 N. Y. 65, 30 N. E. 259, by the Court of Appeals of New York, was one very similar in character to the one before us. There the plaintiff went to the city comptroller, who had charge of the renting of the property, and obtained a proposed rental, and a diagram thereof; the plaintiff then called the defendant's atten-

tion thereto, and they together called on the comptroller, who, during the negotiations, distinctly informed them that the city would pay no commissions, and that, if any were to be paid, the defendant must pay them. According to plaintiff's evidence, defendant, during negotiations for the lease, treated plaintiff as in his employ, and promised to pay him a commission. It was held that a motion to dismiss the complaint was properly denied, since such evidence showed a consideration for defendant's promise. We think that is plainly the case here. It was something more than an assumption of the debt of Nye to appellee Kennady, if one existed. There was an independent consideration moving from the Ritcheys to Mitchell. Mitchell, according to the allegations and evidence, was distinctly informed that he was expected to pay to Kennady for his services in the matter the commission that Nye had agreed to pay. The jury found that he so agreed, and this promise was necessarily a part of the consideration for the contract secured. Presumably Mitchell received value for his promise. He secured a benefit that he sought, and there is no plea or proof of a failure of the consideration. Nor does it make any difference in our view that Kennady was not present. Both by allegation and proof he was instrumental in bringing the parties together; admittedly he brought Nye to the Ritcheys, and the evidence tends to show that Nye, in fact, entered into a contract with the Ritcheys, which later failed, and thereupon Mitchell, in a sense, was substituted for Nye.

[2] Nor does it make any difference that, at the time Mitchell agreed to pay commission to Kennady, no specific amount was named. It is a maxim of law that id certum est quod certum reddi potest. It was held in Hales v. Peters (Tex. Civ. App.) 162 S. W. 386, that a contract by defendant, upon purchasing land from the community administrator, which was the property of the community, to pay the children the value of their interest in the community land so sold was not too uncertain to be enforced; the interest of the children being certainly ascertainable. So here there was no uncertainty in the amount Nye agreed to pay Kennady, and it was this amount that by the verdict of the jury Mitchell agreed to pay as a part of the consideration in securing the contract from the Ritcheys. All he had to do was to go to Nye or to Kennady to ascertain the specific amount covered by his promise.

[3] See, also, Lungerhausen v. Crittenden, 103 Mich. 173, 61 N. W. 270. In that case the suit was upon a contract and promise to pay the plaintiffs, who were attorneys at law, "the same amount as paid to Balwin & Chadwick," other attorneys connected with the same case. The amount paid, or payable, was at no time stated, and it was ob-

jected that the contract was invalid on account of uncertainty as to the amount payable under it. But it was held otherwise. Nor do we think the contract unenforceable because not included within the written contract between the Ritcheys and Mitchell. The two contracts were entirely separate in their objects. In legal effect the contract under consideration was one between Mitchell and Kennady, secured by the Ritcheys as Kennady's agent, and, there being a consideration for the contract moving to Mitchell, it was wholly unimportant that no indebtedness to Kennady existed on the part of either the Ritcheys or Nye.

We should perhaps notice with a little more particularity an objection made in behalf of appellant to the statement in a deposition of one of the Ritcheys, to the effect that Mitchell said at the time the contract was negotiated between the Ritcheys and Mitchell that "he (Mitchell) would take care of Kennady." It was earnestly insisted that this should have been excluded, for the reason that it was not included in the written contract between the Ritcheys and Mitchell, the contention being that it violates the rule that parol testimony may not be received to contradict, vary, or supplement a written contract. The precise question was answered by our Supreme Court in the case of Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845. In that case it was held that a grantor by deed of general warranty (implying a covenant against incumbrances), when sued thereon by the warrantee, who had been dispossessed by a purchaser at a sale under foreclosure of an incumbrance covered by such warranty, can show in defense a parol agreement, as part of the consideration, that the vendee should himself assume and pay off the incumbrance under which the ouster proceedings were had.

[4] By proper bill of exception it is shown that, while appellant's counsel was reading the answer to the twelfth interrogatory propounded to one of the Ritcheys, as he reached the second line, and was proceeding to read the balance of said answer, "Nye was in California and he (Mitchell) had assumed his agreement," the court said: "Hold on; read that again where he said he assumed the contract." The bill further shows that in this same connection the court several times referred to this part of the witness' deposition, and it is strenuously objected that the court thereby gave the answer undue prominence, and it was a comment upon the weight of the evidence. Whatever force might, under other circumstances, be given to the objection thus urged, we think the assignment presenting it must be overruled.

[5] It is abundantly shown by the evidence that at the time of the negotiations between the Ritcheys and Mitchell the Ritcheys made reference to commissions due Kennedy, and insisted upon Mitchell undertaking to pay them, to which Mitchell replied that he "would take care of Kennady." While Mitchell explains that by the use of that remark, which he admits he made, he meant that he would defeat Kennady's claim on the ground that it was nonenforceable, yet no such meaning or purpose was made known to the Ritcheys or Nye, and the expression, when read in the light of the circumstances, could have meant nothing less than that he would satisfy the claim of Kennady for commissions, and Mitchell must have known that the Ritcheys so understood the statement. It would therefore be violative of sound principles of law to give effect to Mitchell's undisclosed purpose or interpretation of his promise. No injury, hence, is apparent because of the court's action in giving undue prominence to the statement of Ritchey in his deposition that Mitchell assumed the Nye contract.

We think all assignments of error must be overruled, and the judgment affirmed.

