CURLEE *v.* MORRIS.

4-5172

120 S. W. 2d 10.

Opinion delivered October 3, 1938.

*Oscar E. Ellis,* for appellants.

*Nat T. Dyer,* for appellees.

BAKER, J. R. H. Russell, as trustee for Farmers & Merchants Bank, of Mountain Home, filed a suit in the chancery court of Baxter county, against T. E. Cockrum and Blanche Cockrum, his wife, who had executed a note for $175, and had given as security therefor a mortgage upon some property described below. The suit was also instituted against M. E. Curlee, Lee Poynter, Dolores Poynter, and Ray Wilks.

T. E. Cockrum and his wife, who were the owners of the land, had conveyed by mortgage, or deed of trust, the southwest quarter of the southwest quarter of section 21, and the west half of the northwest quarter and the southeast quarter of the northwest quarter of section 27 township 20 north, range 11 west. The suit was for judgment upon the note and foreclosure of the mortgage. The note and mortgage had been properly transferred to Russell as trustee, and no question has been raised in regard to the proper parties to the suit. The mortgage, however, was not filed for record until May 26, 1936, though executed on October 20, 1934.

The Cockrums entered into a contract on May 20, 1936, wherein they traded the lands described for a 1931 Model Buick automobile, owned by Curlee, and it is alleged in the complaint that they had agreed to pay $30 to Curlee as the difference in the value of the properties. Cockrum and his wife alleged in their pleadings, and asserted in their testimony, that Curlee had agreed to take up and pay the mortgage upon the lands, and that to indemnify him against loss they had executed to him their note for $220, secured by chattel mortgage upon the automobile and upon twenty-seven head of sheep. It will be observed that at the time this trade was made the mortgage given to secure the note to the bank had not yet been recorded. At or about the time this trade was consummated the trustee or representative of the bank talked with Curlee about paying the note, and it is admitted that Curlee stated that he was trading for the land upon the title as disclosed by the record. However, it is most positively urged by the Cockrums that the $220 note was given to him to indemnify him against loss "upon his picking up the note" or paying it, as the parties interpreted the terms. Curlee and Cockrum went to the clerk's office, where they procured a deed to be written, and not finding the mortgage recorded there at that time, it was decided to omit mention of it in the deed. On that account it is explained that the consideration in the deed was left blank at the time of the preparation, and it is also admitted that, although Curlee was to take this land in exchange for the automobile, no

grantee was named in the deed, but a blank space was left for the name of the grantee to be inserted. Curlee, being a notary public, had Cockrum and his wife sign this deed which was blank as to grantee, and also as to consideration, and he, himself, took the acknowledgment, and kept the deed in his possession. The deed was placed of record immediately thereafter, and the facts in regard to the consideration did not appear according to the contention of the Cockrums; and the grantees named therein are Lee Poynter and Dolores Poynter, his wife, the said Dolores Poynter being the daughter of Curlee, and at the same time a mortgage executed by Lee and Dolores Poynter to Ray Wilks to secure a debt of $175 was recorded.

Upon trial of the case the chancery court decreed that the deed purported to have been executed by the Cockrums to the Poynters be canceled; that Curlee's proceeding against the Cockrums to foreclose the mortgage on the automobile and twenty-seven head of sheep be dismissed, and that the note given by the Cockrums to Curlee for $220, secured by the chattel mortgage on the Buick Sedan and twenty-seven head of sheep be canceled; that the automobile, a 1931 model Buick, be returned to Curlee, and that the mortgage made by the Poynters to Ray Wilks for $175 be canceled, and that Wilks have judgment against Poynters for the amount of principal and interest on the note, for $175, and that Morris, the substituted trustee in the place of Russell, now dead, have judgment against T. E. Cockrum and Blanche Cockrum upon the $175 note, with accrued interest, and that the mortgage executed by Cockrum and wife be foreclosed upon said property, and the land be sold if the amount be not paid in satisfaction of the said decree. From this decree Curlee, Wilks, Poynter and his wife have appealed.

Certain questions were raised by demurrers, and these matters are agued separately in the brief. Without attempting an analysis of the questions arising out of the pleadings, we think the vital points at issue may be presented upon the merits as reflected by the record

upon the whole case, rather than by entering into a technical discussion, upon the law of pleadings.

The first matter that we think presents itself as the key problem in this controversy is the deed under which Wilks and the Poynters and Curlee assert whatever rights they now claim.

There is no dispute by any of the parties that Mr. Curlee was to be the grantee in the conveyance made by the Cockrums when he traded his automobile for the land. Curlee is a land broker, or real estate agent, who apparently knows something of conveyancing, and we assume upon this account that it was he who took charge of the preparation of the deed to be executed by the Cockrums in the transfer of the property. As the Cockrums were getting the automobile which they desired, there was no insistence upon their part as to how the deed should be drawn.

While these two last statements do not appear directly in proof the facts are clearly deducible therefrom. Curlee does not even pretend that he advised the Cockrums, to whom the land would be transferred by writing into the blank space the name of the grantee, nor does he pretend that he had any authority, oral or written, to write in the name of any person therein. We do not think it to be in dispute that at the time the deed was executed, that is, signed by T. E. Cockrum and his wife, and then acknowledged before Curlee, that there was any consideration stated in the deed. Curlee says that he wrote into the blank space for the grantee the name of his daughter and son-in-law, Lee, and Dolores Poynter. Under these facts and conditions was the deed valid?

There is a strong insistence upon the part of the appellants that it was and whatever be the argument offered in support of that insistence, we think the condition is met by the authority set out in *Williams* v. *Courton*, 172 Ark. 129, 287 S. W. 745. The decision in the cited case was rendered in 1926 by the late Mr. Justice HART. We quote from the opinion: "In *Adamson* v. *Hartman*, 40 Ark. 58, the court said: 'An instrument of writing, purporting to be a conveyance, signed and acknowledged by the grantor, and otherwise in good form, does

not become his deed until the name of the grantee and the amount of the consideration are inserted therein. And an agent cannot fill such blanks. in the grantor's absence, unless his authority is in writing.'

"Numerous cases are cited in support of the decision, and, whatever may be the rule elsewhere, it is settled in this state that the instrument in question could not become the deed of the grantor unless the name of a grantee was inserted, and that act could not be performed by an agent, in the absence of the principal, unless his authority was in writing. It is not claimed that Clarence C. Courton had any written authority to insert the name of Clyde V. Seale as grantee.''

The two quoted paragraphs above answer every argument and every authority submitted by appellants; and since we see no reason to change or in any way modify the opinion it must be conclusive here. Upon this authority and similar sound reasoning, the chancellor reached a correct conclusion as to the validity of this deed, and, therefore, properly held that it was void and not merely voidable.

Since it must be determined that this deed was void, then Lee Poynter and wife certainly took no title under it, and it is not seriously insisted, though perhaps argued to some extent, that they were or could have been innocent purchasers under the said conveyance. The truth is, that there is no insistence that they paid anything for the land, or that they were purchasers at all. It is asserted, however, in addition to other facts that Lee Poynter and Curlee were business partners, and this assertion seems to have been justified in that, immediately after this conveyance to Poynter and wife they mortgaged the property to Wilks for $175, which sum of money, it is charged, was deposited in the bank to the credit of Curlee and Poynter. Though this is not definitely proven, it is not expressly denied.

It is insisted that Wilks is an innocent party to this proceeding. While we do not think that he was, it apparently makes no difference under the condition above stated. He merely took a mortgage from one who had no more title to the land than if he had held it under a

forged deed, without knowledge of the forgery. If Wilks was not guilty of any bad faith in the transaction the most he was entitled to receive was a judgment against those who had benefited by his beneficence. He certainly was not entitled to have a lien declared against land that did not belong to the Poynters who executed the mortgage. In cancellation of the note for $220 and the mortgage executed by the Cockrums upon the automobile and upon the sheep the court might well have proceeded upon the theory that the fraud attempted to be perpetrated in the transfer of the land justified a rescission of the purported contracts, and that the equitable rights of the parties could best be preserved by an attempt to restore the parties to the position in which the court found them. The contract as written when the blanks were filled without authority was void. *General Motors Acceptance Corporation* v. *Sanders,* 184 Ark. 957, 43 S. W. 2d 1087.

The court might well have found, and, we think, the evidence justifies it, that Curlee had entered into a contract with the Cockrums that he would pay the $175 note to the bank and the interest; that he made this promise to the Cockrums for the benefit of the bank, and since he had not made the payment he was not entitled to collect the $220, and also the court might well have found, and perhaps did, that although the Cockrums had attempted a conveyance of the property, no effectual conveyance had been made, and Curlee had received nothing in return for his automobile, and that it would be inequitable to permit the Cockrums to retain the automobile without a conveyance of the land, and since the mortgage executed by the Cockrums, as security for the note held by the bank, or its trustee, was a first lien upon the lands, for its approximate value, and it was now in foreclosure, Curlee should be satisfied with the return of the automobile, and that he must suffer the cancellation of the $220 note given to him as security or indemnity against loss, which he did not suffer.

An examination of all the pleadings, together with the evidence offered, which in some respects may be deemed as substantial amendments thereto, seems fully

to justify the chancellor's conclusions. We deem it unnecessary to enter into any general or specific discussion in regard to property rights arising out of the first, and alleged second mortgages, as the above statement seems to dispose of the said second mortgage, or its legality as such.

Since it is so seriously argued, however, that the plea that Curlee was to assume the indebtedness of the Cockrums is in violation of the statute of frauds, because not in writing, we call attention to the fact that this is in regard to the consideration purported to have been given, or at least promised by Curlee for the conveyance of the property, and it has never been seriously disputed in this state that the consideration may be explained by oral testimony.

It was held in *Scott* v. *Moore,* 89 Ark. 321, 116 S. W. 660, that an oral promise by a grantee of land to pay a debt of the grantor to a third person as part of the consideration for the conveyance is not within the statute of frauds.

It has also been held the defendant's assumption of a mortgage as a part of the purchase price of mortgaged land was an original undertaking, so in a suit by mortgagee on a note secured by a mortgage against the purchaser who assumed the debt, the defendant's plea of the statute of frauds was without avail. Hughes on Arkansas Mortgages, § 209, *J. H. McGill Lumber Co.* v. *Lane-White Lumber Co.,* 90 Ark. 426, 119 S. W. 822.

Our conclusion is that the decree of the chancellor is substantially correct in all particulars.

Affirmed.