Roy W. BIERSCHWALE et al., Appellants,

v.

Herbert C. OAKES et al., Appellees.

No. 15804.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 3, 1973.

Rehearing Denied May 31, 1973.

Schlanger, Cook & Cohn, Joel W. Cook, Stephen C. Paine, Houston, for appellants Roy W. Bierschwale, Weldon E. Country-man and Eli David Philley.

Vinson, Elkins, Searls, Connally & Smith, James Greenwood, III, Houston, for appellants Herbert C. Oakes and United Properties, Inc.

T. D. Smith, Houston, for appellees Joe E. Counts, Marion E. Ford, Milford Frnka and T. D. Smith, Trustee.

James R. Tucker, Jamail & Gano, John Gano, Houston, for appellees James E. Meadows and Continental Mortgage & Realty of Houston, Inc.

Jonathan S. Day, Roger T. Baker, Houston, Attys.; Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for interve-nor, Bank of Texas.

COLEMAN, Chief Justice.

This is a suit to rescind a transaction whereby certain real estate was exchanged for certain promissory notes on the ground of fraud. Prior to the filing of this suit the real estate was sold to a bona fide pur-chaser and the plaintiffs seek to recover the proceeds of the sale. Other parties in-tervened claiming an interest in such pro-ceeds. Judgment was entered on a jury verdict after certain special issues were disregarded by the court. Both the origi-nal plaintiffs and the defendants have ap-pealed.

Roy W. Bierschwale, Weldon E. Coun-tryman and Eli David Philley, hereinafter sometimes referred to as Bierschwale, sued Herbert C. Oakes and United Properties, Inc. alleging that they conveyed a certain tract of land improved with valuable apart-ment buildings to Herbert C. Oakes in ex-change for fifty-nine (59) promissory notes, payable to Oakes, executed by James H. Shoffner, William E. Goyen, Jr., and Louis R. Davis.

Bierschwale alleged that Oakes conveyed the property to United Properties, Inc., the

stock of which was wholly owned by him; that United Properties, Inc., conveyed the property to Eugene J. Goldman in consideration of $40,000.00 in cash, and twenty-three notes each in the principal amount of $4,000.00, and a final note in the principal amount of $1,879.10, the notes payable in monthly installments beginning September 15, 1967. They sought to impress a constructive trust on the cash and notes received from such sale.

Eugene J. Goldman was made a defendant in this suit, but this cause of action was severed by the court. An order was entered requiring him to make the payments required by the notes into the registry of the court.

Bierschwale also named as defendants Marion E. Ford, Joe H. Counts, Milford C. Frnka and T. D. Smith, alleging that Oakes transferred to them notes 17 through 24 to secure obligations owed to them by Oakes, and that real title remained in Oakes or United Properties, Inc. It was also alleged that they were not innocent purchasers.

The Bank of Texas was named as a defendant because Oakes transferred notes 1 through 7 to it. It was alleged that the Bank was not an innocent purchaser for value and that the stock was transferred to secure an existing debt, for which reason equitable title remained in Oakes or United Properties, Inc.

After disregarding certain special issues, the trial court rendered judgment on the jury's verdict. The court decreed that the exchange agreement was properly rescinded by reason of fraud in its procurement and fixed a constructive trust on the proceeds of the sale of the property by United Properties, Inc. to Goldman in favor of the Bierschwale plaintiffs and intervenors Meadows and Continental Mortgage and Realty Company. The court found that the defendants had received cash, which with interest at the rate of 6% per annum from date of receipt to date of judgment amounted to $55,454.12, and entered judg-

ment against said defendants in the sum of $51,965.78, thereby crediting them with the amounts paid on the Shoffner, Goyen, Davis notes. The court also awarded to the plaintiffs and intervenors named above title to the Goldman notes, subject to the lien of T. D. Smith, Trustee, on notes 1 through 7, and the lien of the Bank of Texas on notes 17 through 24. The court also awarded said plaintiffs and intervenors judgment in the sum of $24,999.53 and $6,379.32, respectively, for their loss resulting from the pledge of the notes to Smith, Trustee, and the Bank of Texas. The plaintiffs were also awarded judgment in the additional sum of $18,999.70 against said defendants, representing the difference between the amounts previously awarded to plaintiffs and the amounts received by defendants from Goldman in cash and notes plus interest.

The defendants appealed from the entire judgment. The plaintiffs appealed from those portions of the judgment favorable to intervenors, the Bank of Texas, and T. D. Smith, Trustee.

### Appeal of Herbert C. Oakes and United Properties, Inc.

The defendants have briefed their points of error one, two and three together. They contend that the jury's answers to Issues 1 through 9 establish as a matter of law that plaintiffs were not justified in relying on false statements of material fact made by Oakes; that the answers to Issues 4 and 8 establish that the plaintiffs were charged with knowledge that the false statements made by Oakes were in fact false; that the answer to Special Issue 5 is supported by no evidence, or by insufficient evidence, or is contrary to the great weight and preponderance of the evidence.

Black Hardware was an old firm, which had an excellent reputation as a wholesale dealer in hardware. Oakes, through a corporation which he controlled, borrowed certain funds from Bank of Texas for the purpose of purchasing stock in Black Hardware. He had made tentative ar-

rangement for financing to the end that he would be able to purchase substantially all of the voting stock of the corporation pursuant to an arrangement he had with some of the stockholders. On February 10, 1966, this corporation purchased 12% of the stock and Oakes was elected President of Black Hardware. He was unable to consummate the purchase of the balance of the stock, and resigned as President of the corporation. Subsequently he acquired another corporation, Southern Investors, which had no assets, for the purpose of acquiring the controlling stock in Black Hardware. It took over the ownership of the stock already acquired and assumed the bank loan at the Bank of Texas. Oakes then devised a plan to acquire the remaining stock necessary to control the company by using funds of Black Hardware to redeem outstanding stock. The Bank of Texas acted as escrow agent in these transactions.

Oakes arranged for Black Hardware to borrow $800,000.00 by pledging its inventory and accounts receivable, and another $50,000.00 secured by its fixed assets, from which funds the company paid off its other debts. It sold its Galveston warehouse and inventory for $297,000.00. On June 16, 1966, Black redeemed most of its outstanding common stock for $278,518.31. Oakes then became President and paid himself a salary at the rate of $2,000.00 per month for the preceding months to the date he had first been elected President. He arranged for Black Hardware to loan Southern Investors $50,000.00, with which it purchased Black Hardware stock. He brought into the company Shoffner and Goyen, and promoted Davis. He made certain changes in business operations which reduced expenses. He attempted to merge Black Hardware with another company and was unsuccessful.

On October 21, 1966, Oakes sold his stock in Southern Investors, which held the Black Hardware stock, to Shoffner, Goyen and Davis. He made no investigation of their financial condition. In payment for his stock Oakes accepted a series of 93 notes each in the principal amount of $2,000.00 bearing interest at the rate of 6% per annum, and payable in installments of $30.00 per month. These notes were secured by the Southern Investors and Black Hardware stock, but the security was subordinate to a pledge of the stock to secure the $65,000.00 balance due the Bank of Texas on the loan to Southern Investors. He also received $4,000.00 in cash paid out of Black Hardware funds.

On November 7, 1966, Oakes approached Jim Meadows, a real estate broker, and told him that he was interested in trading some of these notes, hereafter referred to as Black Hardware notes, for income producing property. Meadows showed him the Memorial Woods Apartments owned by Bierschwale, Countryman, and Philley. After considerable negotiating Oakes purchased the property, subject to an indebtedness secured by a lien on the property in the sum of $379,155.83, for 59 of the Black Hardware notes. 47 of the notes were assigned to Bierschwale, Countryman and Philley and 12 were assigned to Meadows and his corporation, Continental Mortgage and Realty of Houston, Inc., in accordance with an agreement between Bierschwale and Meadows, as a commission on the sale.

Payments were made on the Black Hardware notes for two months. Thereafter Black Hardware was taken over by its creditors, and went into bankruptcy July 31, 1967. Oakes had financial statements of Black Hardware for ten years, including one dated June 30, 1966. He knew it had sustained losses for the preceding five years amounting to about one million dollars. While he testified that he did not know whether it operated at a deficit during the period he was serving as President of the company, in fact it continued to sustain losses during that period. During the period he controlled the corporation, he removed from its available cash the total sum of $372,819.81. There was testimony that during this period Black Hardware was unable to take all of the discounts

available for prompt payment. There was testimony that Meadows, Bierschwale, Countryman and Philley were unaware of these facts.

At their first meeting Oakes gave Meadows certain written information about Black Hardware including this statement:

"Black Hardware Company was incorporated in Galveston in 1910. Annual sales for the last three fiscal years were: 1964 $4,447,000; 1965 $4,794,000; 1966 $5,425,000. The company represents over 100 manufacturers, and sells to about 4,000 retail hardware stores and lumber yards within 250 miles from Houston. During the early part of 1966, the company completed moving into a new 137,000 foot sq. building at 7333 Major, across from the International Airport. This modern single story warehouse was built and leased to Black by Gerald Hines. . ."

He also furnished a condensed financial statement, which he said he had prepared from an audited statement dated June 30, 1966. There is a conflict in the testimony as to whether he also gave Meadows a copy of the audited statement. On deposition Meadows testified that he was given the audited statement and that he gave it to Bierschwale. At the trial he denied receiving the statement before the exchange of property was completed. Bierschwale denied seeing the audited statement. The condensed statement prepared by Oakes showed current assets of $2,000,711.00 and total assets of $2,132,802.00. It listed total current liabilities of $1,581,354.00. It showed preferred stock @ $100,000.00; common stock @ $9,000.00, and surplus @ $442,449.00.

There was testimony that Mr. Oakes represented to Meadows, Bierschwale, and Countryman that the notes were valid and strong; that on February 6, 1967, the condition of Black Hardware was better than as reflected by the condensed statement given them; that he "vouched for" Black

Hardware and for Shoffner, Goyen and Davis; that "they were all hand picked people by him"; that the gross sales of the company had increased by $400,000.00 since the June statement; that the notes were collectible; that the notes were just like "owning stock in Fort Knox"; that it was a money making business; that he had the company in a very good running shape and that Shoffner, Goyen and Davis "would continue and make a good go of it"; that the company "was doing good"; that it was just a real good little company." Oakes did not tell any of them that Black Hardware had suffered losses in each of the past five years, the total loss approaching the sum of One Million Dollars, or that he had withdrawn large sums of money from the company while he managed it.

Meadows, Bierschwale, Countryman and Philley testified that they relied on the representations made by Oakes as to the financial condition of Black Hardware, and as to the fact that the notes were good and collectible and would not have agreed to the exchange of property had they known of the losses suffered by the company. Two of the men testified that they asked their bankers about Black Hardware, but received no information. One of the officers of the Bank of Texas testified that he told Bierschwale that the notes were weak and that Oakes was trying to peddle them all over town. Bierschwale testified that the official told him only that Oakes was his customer and he couldn't discuss his business, but that the notes were subordinate to a lien held by the bank.

Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based thereon by a plea that the party defrauded might have discovered the truth by the exercise of proper care. There is no duty on the defrauded party to make any investigation as to the truth or falsity of the statements made to them. Isenhower v. Bell,

365 S.W.2d 354 (Tex.1963); Moore v. Beakley, 215 S.W. 957 (Tex.Comm'n App. 1919).

Knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud is in law knowledge of the fraud. One cannot be charged with lack of diligence in failing to make inquiry until he has knowledge of some fact that should have aroused his suspicion. Courseview, Inc. v. Phillips Petroleum Company, 158 Tex. 397, 312 S.W.2d 197 (1957); Wise v. Anderson, 359 S.W.2d 876 (Tex.1962).

Bierschwale made a cursory investigation as to the value of the notes by inquiry to bankers and by walking through the premises occupied by Black Hardware. The evidence does not show that they discovered, or knew from any source, facts which would cause a reasonably prudent person to make further inquiry. The fact that, as the jury found, Bierschwale "in the exercise of reasonable care could have known" that the statements made by Oakes were false, does not defeat their cause of action. Isenhower v. Bell, supra; Tips v. Barneburg, 11 S.W.2d 187 (Tex.Civ.App. —San Antonio 1928, err. ref.).

The jury found that Oakes transferred the notes to Plaintiffs by means of an untrue statement or statements of a material fact or facts, and that Plaintiffs relied upon an untrue statement or statements made by Oakes in accepting the notes. The jury failed to find that "at the time of such transfer plaintiffs knew that all such statements were untrue," but did find "that at the time of such transfer Plaintiffs in the exercise of reasonable care could have known all such statements were untrue." The jury was instructed:

" . . . the term 'untrue statement' as used herein means a statement of fact which is not in fact true. This term may also include statements of judgment or opinion if the same are intended to be accepted as statements of fact by the person making the statement, and the judgment or opinion is not honestly believed to be true by the maker and is made by the maker for the purpose of deception and is accepted by the person to whom it is communicated as fact."

There is evidence that Bierschwale et al, and James E. Meadows, relied on untrue statements made to them by Oakes in accepting the Shoffner-Davis-Goyen notes. The jury's finding to that effect is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The jury also found, in answer to Issue No. 6, that "At or prior to the transfer of the Shoffner-Davis-Goyen notes to the plaintiffs, Herbert C. Oakes omitted to state a fact or facts which would make the statements made by him not misleading"; that such omission was of a material fact or facts; that "Plaintiffs knew of such omission to state such fact or facts"; that "Plaintiffs accepted the Shoffner-Davis-Goyen notes because of such omission of Herbert C. Oakes to state a material fact or facts."

Oakes would have us construe the finding that "Plaintiffs knew of such omission to state such fact or facts" which would make the statements made by Oakes not misleading as a finding that Plaintiffs knew the facts which Oakes omitted to state. Bierschwale contends that "one can know that another has omitted to state a fact without knowing that the fact exists," and that the construction sought by Oakes would result in a conflict between the answer to Special Issue No. 8 and the answer to Special Issue No. 10 by which the jury found "that the plaintiffs accepted the Shoffner-Davis-Goyen notes because of such omission of Herbert C. Oakes to state a material fact or facts."

In First National Bank v. Rush, 246 S. W. 349 (Tex.Comm'n App., Section B, 1922), the court said:

"All the issues must be considered together as a whole. If, when construed

as a whole, they admit of more than one reasonable construction, the trial court has power to apply that reasonable construction which he deems proper. Elder-Dempster Co. v. Weld Neville Co. (Tex.Com.App.), 231 S.W. 102. If they are conflicting and one finding destroys another, then the verdict will not support a judgment upon either finding, and it must be set aside. But if, taking all the findings together, and applying them to the contested issues in the case, they fairly dispose of those issues, and are not ambiguous or conflicting, then the duty rests upon the court to enter judgment in accordance with all pertinent findings. . . ."

In Walker v. Houston Electric Co., 155 S.W.2d 973 (Tex.Civ.App.—Galveston 1941, err. ref.), it was said:

"The courts of this state have uniformly held that apparent conflicts in the jury's answers to special issues submitted should be reconciled, if this can be reasonably done in the light of the facts in a particular case, the pleadings and evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole, and that findings on ultimate facts will control those on merely evidentiary issues, and that specific findings will control general ones, and that, if, upon a reasonable interpretation of the findings, it appears that they are not in real and irreconcilable conflict, they then form the proper basis for judgment. . . ."

By Special Issue No. 6 the jury found that at or prior to the transfer of the notes to the plaintiffs Oakes omitted to state a fact or facts and also found that such facts, had they been stated, would have made his untrue statements not misleading. The jury had previously declined to find that the plaintiffs knew that the statements made by Oakes were untrue, but that by the exercise of reasonable care they could have known that they were untrue. The jury found that the plaintiffs relied on the untrue statements and that the omission of Oakes to state material facts caused the plaintiffs to accept the notes. The jury was instructed that "the words 'material fact or facts' means such fact or facts which had the plaintiffs known such fact or facts plaintiffs would not have entered into the transaction." These findings are inconsistent with a belief on the part of the jury that the plaintiffs knew facts which would make Oakes' untrue statements not misleading. They are not inconsistent with a finding by the jury that the plaintiffs knew at the time of the transaction that Oakes omitted to state facts, which the jury, looking back on the transaction, could determine were of such significance as to render Oakes' untrue statements not misleading. For example, the jury might have determined from the evidence before them that the plaintiffs knew that Oakes had omitted to give them information concerning the profits or losses of Black Hardware and that had they known that the company had suffered substantial losses for several years and probably was continuing to lose money on its operations, they could not have been misled by Oakes' representation that Black Hardware was a good little company or that the notes, backed only by the profit making potential of the company, were "strong," or "just like owning stock in Fort Knox."

This construction of the effect of the answers made to the issues is a reasonable one, considering the finding as a whole, which the trial judge was at liberty to adopt. The trial judge did not err in entering judgment based on these findings. Gainesville National Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959 (1890); Crofford v. Bowden, 311 S.W.2d 954 (Tex.Civ.App. —Fort Worth 1958, err. ref.).

Continental Mortgage and Realty Company was a corporation owned by Meadows, who is a real estate broker. Oakes approached Meadows about exchanging the Black Hardware notes for income property. Meadows interested Oakes in the Me-

morial Woods Apartments, and eventually negotiated the sale. He testified that Oakes was "selling him on Black Hardware about as hard as I was trying to sell him on the apartments." He conducted, or participated in, substantially all of the negotiations with Oakes. He testified that he relied on the statements made by Oakes in accepting Black Hardware notes for his commission. Meadows represented Bierschwale in this transaction and was entitled to receive a commission on the sale in the sum of $25,000.00. Bierschwale told him that since there was no cash involved in the sale, if it was to go through, he, Meadows, would have to accept notes for his commission. Meadows agreed to accept the notes, and a contract was signed. There is no evidence that Oakes knew of this agreement prior to the execution of the contract of February 5, 1967. At the closing Bierschwale directed Oakes to endorse twelve of the notes to Meadows and his company. Meadows would not have accepted the notes had he known the statements made by Oakes were untrue.

Oakes contends that there is no evidence that Oakes made any statements to Meadows except those made to him as the representative of Bierschwale. There is no testimony of any statement made by Oakes for the express purpose of inducing Meadows to accept notes in lieu of cash for his commission. In his charge to the jury the court instructed it that the word "Plaintiffs" as used in the charge included James Meadows and Continental Mortgage and Realty Co. There is evidence that statements concerning the status of Black Hardware were made to Meadows for the purpose of inducing him to seek a purchaser for Oakes' notes, and that at least a few days before the closing Oakes knew that Meadows was to accept notes for his commission.

There is evidence to support the answers made by the jury that Meadows relied on untrue statements of material facts and was thereby induced to accept the notes. Oakes contends that as a matter of law

Meadows had no right to rely on the statements made by him because they were made to him as agent for another, and to affect the action of the other, and were not intended to influence his own action. The Supreme Court of Texas approved such a statement of the law in Westcliff Co. v. Wall, 153 Tex. 271, 267 S.W.2d 544 (1954). In that case the court also quoted with approval from Williamson v. Patterson, 106 S.W.2d 753 (Tex.Civ.App.—Eastland 1937, writ dism'd), as follows:

> " 'A person making a representation is only accountable for its truth or honesty to the very person or persons whom he seeks to influence; no one else has a right to rely on the representations and to allege its falsity as a wrong to him.' "

■ This narrow legal problem was not brought to the attention of the court in Oakes' motion for new trial. The point that as a matter of law Oakes was entitled to judgment because there was no evidence that Oakes made representations *to* Meadows *to induce* action on his part was not preserved. Paragraphs (a), (b), and (c) of Point of Error Number Five or the substance thereof were not distinctly set forth in Oakes' Amended Motion for New Trial as required by Rule 374, Texas Rules of Civil Procedure, and are waived. Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379 (1952).

■ The point that the court erred in entering the judgment for Meadows because he was not the agent of Oakes and was due no commission from Oakes cannot be sustained. Meadows did not sue Oakes for a commission and his recovery was not based on such a theory.

■ Oakes complains that the trial court erred in admitting into evidence Exhibit 26P which included a certified copy of the charter forfeiture petition and default judgment dissolving Southern Investors Trading Corporation because the same was immaterial, inflammatory and prejudicial. This was the corporation purchased

by Oakes as the vehicle for obtaining control of Black Hardware. The evidence showed that this corporation had no assets other than that stock and that it was indebted to Bank of Texas for funds used to acquire Black Hardware stock. The evidence showed that Oakes sold all of the stock in this company to Shoffner, Goyen and Davis in the transaction by which he surrendered control of Black Hardware to them. Permitting proof of the charter forfeiture, if error, was not prejudicial or inflammatory, and was harmless. Rule 434, T.R.C.P.

The trial court admitted into evidence Exhibit 36P, a copy of the Petition of Johnston Bearing and Supply Company for arrangement under Chapter 11 of the Bankruptcy Act, and permitted Oakes to be interrogated concerning this company and its financial condition. The court also permitted testimony concerning the bankruptcy of Republic Drug Company. Oakes objected for the reason that the transactions were collateral to the issues in this case and that the evidence adduced was inflammatory and prejudicial.

Bierschwale alleged a cause of action against Oakes based on his violation of various sections of Art. 581, Vernon's Ann.Rev.Civ.St., dealing with the sale of securities. They called Oakes to testify and questioned him about the different corporations in which he had been a major stockholder and the disposition he made of that stock. By way of an unresponsive answer to these questions Oakes made such statements as: "It is a substantial company"; and "It is a prosperous concern today." On direct examination by his own attorney Oakes was asked to name each company in which he had stock ownership; to tell when he acquired his stock; how he disposed of it; and "what its present situation is." There was an objection that the answers "as to the consideration or the result of the sale" would be immaterial and inflammatory. The objection was overruled and during the course of his testimony Oakes states that Johnston Bearing and

Supply was "still in operation" and that Republic Drug is "a company that does about five million a year." He also testified that he founded Southwestern Match Company which he sold at a substantial profit for cash, and that it was still in existence; that he was one of the founders of American Screen Manufacturing Company and later sold his interest at a substantial profit for cash, and that it was still a viable company; that he formed O S J Capital Corporation and eventually exchanged it for stock in Dejay Stores, a company listed on the American Exchange, and lost his investment; that he became President of DeVega Stores, "a company doing twenty million a year, listed on the American Stock Exchange"; that he founded United Properties, Inc., and later exchanged his stock for stock in Republic Drug Company and in turn sold his "hundred percent stock in that company in exchange for a large block of stock in a company that is traded over the counter called Hotei."

Thereafter Bierschwale and Meadows offered for impeachment purposes a copy of the petition of Johnston Bearing and Supply Company for arrangement under Chapter 11 of the Bankruptcy Act, which was filed while Oakes was president of the company. This exhibit was admitted into evidence over the objection of Oakes that such evidence was irrelevant, immaterial, highly prejudicial; that it is purely collateral and not impeaching. The court allowed a running bill and permitted Oakes to be examined with reference to the proceeding. Over the same objection the court permitted introduction of evidence that about one month after Oakes disposed of his stock in Republic Drug a petition in bankruptcy was filed for that company. He testified that he was appointed by the federal judge and the creditors' committee to manage the company.

On examination by his own attorney Oakes was asked how he became manager and chief operating officer of Republic Drug. While he was explaining the details

of the transaction there was an objection. After an unreported discussion at the bench Oakes' attorney said: "Mr. Oakes, in answering this question, try to keep it down to about two and a half to three minutes of narrative statement." The judge then interjected: "Keep it down to two sentences, if you can." There was no objection to the comment.

Oakes then testified that after he exchanged his stock for Hotei stock, "the Hotei appointed a new president, a fellow named Murray Hillebrandt," who had an interest in several stores in Denver. He started moving thousands of dollars worth of merchandise from Republic's warehouse into his stores. The creditors learned of this and appointed Oakes manager under the supervision of the federal court.

He testified that the lender financing Johnston Bearing and Supply Company quit doing business in Texas because of the statutory limit on interest rates and called its loan. Johnston was unable to repay as rapidly as demanded and had to go into reorganization. The company survived and Oakes sold it to Bell-Hyden Supply Company. The company never ceased operations.

 A witness may not be impeached as to his testimony pertaining to collateral matters. Christie v. Brewer, 374 S.W.2d 908 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). "Impeachment by contradiction is not permitted on collateral matters." Head v. Halliburton Oilwell Cementing Company, 370 F.2d 545 (5th Cir. 1966). The test of admissibility is: "Could the fact as to which error is predicated have been shown in evidence for any purpose independently of the contradiction?" 3 Wigmore Evidence, 3rd Ed. § 1003.

 The trial court erred in admitting the testimony and exhibits of which complaint is made. The circumstances bearing on such evidence have been set out in some detail. After reviewing the record as a whole, we are unable to say that the error amounted to such a denial of Oakes' rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958).

 This appellant contends that the trial court's comment, "Keep it down to two sentences, if you can," implied to the jury that no explanation of the bankruptcies was appropriate. The trial judge may not, either consciously or unintentionally, convey to the jury his views concerning the credibility of the witnesses, the weight of their evidence, or the merits of the controversy. McDonald, Texas Civil Practice, 1950 Ed., Vol. 3, Sec. 11.20. The remark might be construed as a comment on the weight of the evidence. Oakes argues that the remark amplified the prejudicial effect of the already damaging evidence to the effect that various companies with which he had been associated ceased operations after he sold his stock.

The error, if any, was waived by the failure to object to the comment. City of Austin v. Cook, 343 S.W.2d 545 (Tex.Civ. App.—Austin 1961, writ ref'd n.r.e.). The comment, if error, was harmless under Rule 434, T.R.C.P. Leatherwood Drilling Co. v. TXL Oil Corporation, 379 S.W.2d 693 (Tex.Civ.App.—Dallas 1964, writ ref., n.r.e.); Mitchell v. Kennady, 238 S.W. 293 (Tex.Civ.App.—Fort Worth 1922, writ dism'd); Midkiff v. Benson, 235 S.W. 292 (Tex.Civ.App.—El Paso 1921).

 The trial court excluded Exhibits 60, 61, 62 and 63, Dun & Bradstreet reports reflecting the financial condition of Black Hardware, Herbert Oakes and Southern Investors Co. during 1966. Mr. Bierschwale testified that he had heard the results or the contents of a Dun & Bradstreet report on Mr. Oakes from Mr. Countryman. Subsequently he explained that Mr. Countryman had his banker attempt to get such a report, but was unable to get it because of insufficient informa-

tion. He then testified that no information came to him from Dun & Bradstreet, directly or indirectly. Meadows testified on deposition that he thought that he and Bierschwale had ordered Dun & Bradstreet reports on Black Hardware, but that he couldn't swear to what they did. In a recorded conference with Oakes before his deposition was taken Meadows stated that he thought that Bierschwale had ordered a Dun & Bradstreet report, but that he didn't believe he had ordered one himself. There is no evidence that Meadows or Bierschwale had seen the particular reports offered into evidence. The trial court sustained an objection on the ground that they constituted hearsay. They were re-offered for the "limited purpose of showing what information would have been available to a man who was making any kind of an investigation in connection with this transaction . . . not . . . for the truth of the matters contained therein." The court again refused to admit them.

■ Had there been evidence that either of the plaintiffs had seen the reports offered, the trial court would have erred in excluding them. They would have been admissible to show that the plaintiffs had notice of the financial plight of Black Hardware as reflected therein, whether or not the statements were true. The evidence would have been material on the question of whether there was a duty to make a further investigation as to the truth or falsity of the statements made by Oakes. McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442 (1941); McCormick and Ray, Texas Law of Evidence (1956 Ed.) § 799, pp. 595–596. However, before one can be charged with knowledge of the contents of an instrument, there must be some evidence that he has seen the instrument. There is no evidence that any of the plaintiffs saw a report on Southern Investors Trading Corporation, or ordered one. The negotiations leading to the sale of the Memorial Woods Apartments took place in the period December, 1966 to February, 1967. Exhibit

60 was a Dun & Bradstreet report on Black Hardware dated October 25, 1966. It reports on the transfer of ownership of Southern Investors Trading Corporation to Shoffner, Davis and Goyen and contains background information on them. Exhibit 61 is a report on Black Hardware dated October 4, 1966. It relates only to the loans made to Black Hardware by Texas Western Financial Corporation. Exhibits 62 and 63 were reports on Southern Investors Trading Corporation, detailing information on Herbert C. Oakes and Black Hardware. The trial court did not err in excluding these exhibits.

Points of error numbers 13 and 14 assert error in submitting Special Issues Numbers 1, 2, 3, 5, 5-A, 6, 7, 10 and 11 because such issues were not raised by sufficient evidence, and in entering judgment based on such issues, asserting that the answers are supported by no evidence, or insufficient evidence, or that they are contrary to the great weight and preponderance of the evidence. These points are overruled. These were issues of fact concerning which the evidence was conflicting. The answers made by the jury were not so contrary to the weight and preponderance of the evidence as to be clearly wrong.

Appellant Oakes contends that in rendering judgment the court erroneously employed an express trust accountability concept as a measure of the substantive right to damages. He points out that other than the 24 Goldman notes, there was no identifiable property upon which it could impress a constructive trust. He concedes that if the fraud findings are valid, the court could properly impose a constructive trust on the Goldman notes and the proceeds of the notes paid into the registry of the court, but he contends that the court erred in utilizing a constructive trust concept to render a money judgment for the plaintiffs in excess of the damage actually suffered.

By an alternative plea the plaintiffs sought judgment for the "actual damages in the amount of $94,100.00," together with

interest thereon at 6% per annum from February 9, 1967, until paid, and for a constructive trust on the Goldman notes to be applied upon said damages. In the judgment the court undertook to award them the full consideration received by Oakes and his corporation on the sale of the Memorial Woods Apartments, a sum in excess of $94,100.00.

The principles of law to be applied to the facts as found by the jury are set out in the American Law Institute's Restatement of The Law of Restitution. § 160 of that treatise reads: "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Under Comment d it is stated:

"In most cases where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; . . .

". . . Where the defendant makes a profit through the consciously wrongful disposition of the plaintiff's property, he can be compelled to surrender the profit to the plaintiff and not merely to restore to the plaintiff his property or its value. . ."

Comment g states:

". . . if one person obtains . . . land from another by fraud, and thereafter transfers the . . . land to a third person who is not a bona fide purchaser, the defrauded person can maintain a proceeding in equity for specific restitution against the third person. . . ."

Comment h:

"Where property is held by one person upon a constructive trust for another, and the constructive trustee by the wrongful disposition of the property acquires other property, he holds the property so acquired upon a constructive trust. . ."

Comment i:

"A constructive trust does not arise unless there is property on which the constructive trust can be fastened, and such property is held by the person to be charged as constructive trustee. Thus, although a constructive trust arises where a transfer of the title to land . . . is obtained by fraud, yet where by fraud a person is induced to render services, no constructive trust arises, even though the person rendering the services is entitled to recover the value of his services. . ."

In Comment f, § 151 of the Restatement, it is stated:

"A person who tortiously has acquired, retained or disposed of another's property with knowledge that such conduct is wrongful is entitled to no profits therefrom. Therefore, he is subject to liability at the election of the rightful owner for the value of anything received in exchange therefor. . ."

Thus when Oakes acquired the Memorial Woods Apartments by fraud, as found by the jury, he held the title as constructive trustee for the sellers. When he transferred the title to his wholly owned corporation, the corporation is charged by law with knowledge of the fraud. Since it was not a bona fide purchaser, United Properties, Inc. took title as a constructive trustee also. On the subsequent sale of the property to Eugene J. Goldman, a bona fide purchaser, the proceeds of the sale were impressed with a constructive trust in favor of the defrauded owners of the equitable title. The trust can be enforced only on the notes and proceeds thereof remaining in the hands of United Properties, Inc. at the time judgment was rendered. The equitable owners of the property were entitled to a judgment against Oakes and Unit-

ed Properties, Inc. for the balance of the proceeds of the sale by United Properties, Inc. to Goldman. Fidelity & Deposit Co. of Maryland v. Wiseman, 124 S.W. 621 (Tex.1910); Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471 (Tex.1945); Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960); International Bankers Life Insurance Company v. Holloway, 368 S. W.2d 567 (Tex.1963); Alexander v. Harris, 254 S.W. 146 (Tex.Civ.App.—Ft. Worth 1923, err. ref.); Pounds v. Jenkins, 157 S.W.2d 173 (Tex.Civ.App.—Texarkana 1941); Miller v. Huebner, 474 S.W.2d 587 (Tex.Civ.App.—Houston, 14th, 1972, err. ref., n.r.e.); Barnes v. Eastern and Western Lumber Company, 205 Or. 553, 287 P. 2d 929 (1955).

■ Oakes asserts that Meadows and Continental were in no position to utilize the theory of constructive trust since they did not own or have any interest in the apartments and thus had nothing to trace. Bierschwale also contends that the action of the court in decreeing ownership of a percentage of the notes to be in Meadows and Continental was error. There are no facts in evidence from which a constructive trust for the benefit of Meadows and Continental could arise. The ownership of the Bierschwale interest in the notes and the cash in the registry of the court should not have been reduced by the 20.33% awarded to Meadows and Continental.

Meadows agreed with Bierschwale that he would accept Black Hardware notes in payment of his commission. Bierschwale authorized Oakes to transfer twelve of the notes directly to Meadows and Continental. Meadows did not purchase the notes from Oakes. Bierschwale bought the notes and had Oakes transfer twelve of them to Meadows as a matter of convenience. Meadows had no proprietary interest in the apartments to support an interest in the Goldman notes on the theory of a constructive trust.

■ Bierschwale and Meadows alleged violation of the Securities Act as a basis for recovery of damages. The jury found that Oakes transferred the notes to plaintiffs "by means" of an untrue statement or statements of a material fact or facts; that plaintiffs did not know the statements were untrue; that the plaintiffs relied on the untrue statements. The jury also found that plaintiffs in the exercise of reasonable care could have known all such statements were untrue. The jury found that Oakes "omitted to state facts which would make the statements made by him not misleading," but that the plaintiffs knew of such omission to state such fact or facts.

Art. 581—33, subd. A(2), V.A.C.S., provides that one who "offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable care could not have known of the untruth or omission) is liable to the person buying the security from him" for the consideration paid for the security with interest.

The jury findings will not support a judgment for plaintiffs under this paragraph.

Section (1) of that Article provides that recovery may be had against any person who offers or sells a security in violation of Sections 7 or 12 of the Securities Act. Section C of Art. 581—5, V.A.C.S., provides that the provisions of the Securities Act shall not apply "to any sale, offer for sale, . . . dealing in or delivery of any security under any of the following conditions: C. (1) Sales of securities made by or in behalf of a vendor . . . in the ordinary course of bona fide personal investment of the personal holdings of such vendor . . . if such vendor is not engaged in the business of selling securities and the sale or sales are isolated transactions not made in the course of repeated

and successive transactions of a like character; . . . "

The jury failed to find that the transfer of the notes to the plaintiffs was an isolated transaction not made in the course of repeated and successive transactions of a like character. It found that Oakes was not in the business of selling securities, and it found that the transfer of the notes to the plaintiffs "was made in the ordinary course of bona fide personal investment of the personal holdings of Herbert C. Oakes or change in such investment." There was sufficient evidence to raise an issue of fact as to whether the sale was made "in the course of repeated and successive transactions of a like character." The answer is not so contrary to the great weight and preponderance of the evidence as to be clearly wrong. The jury verdict establishes that this was not an exempt transaction under the Act. It is undisputed that Oakes had no license to sell securities, and that the notes in question constituted securities as defined in the Act. The trial court properly determined that a cause of action was established against Oakes for violation of Section 12 of the Act. Shriver v. Stoddard, 188 S.W.2d 892 (Tex.Civ.App.—Dallas 1945, err. ref.).

Section 33 of the Act limits the recovery in such a case to the consideration paid for the security, together with interest at 6% per year from the date of payment, less the amount of any income received on the security. The Act provides that the seller "is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid. . . ."

The consideration for the notes was paid to Oakes by Bierschwale and consisted of the conveyance of the Memorial Woods Apartments. Bierschwale (and his associates) was the "person buying the security". They purchased and paid the consideration for the notes transferred to Meadows and Continental in satisfaction of their obligation to them evidenced by the

contract of sale dated February 5, 1967, executed by both Bierschwale and Oakes.

The jury found that the reasonable market value of the Memorial Woods Apartments on February 9, 1967, was $475,000.00, and that $14,260.00 would reasonably compensate Meadows and Continental for the loss which they sustained as a result of their acceptance of the notes in payment of the real estate commission. The trial court sustained Meadows' motion to disregard the latter finding for the reason that the undisputed evidence showed them entitled to recover damages in the amount of $23,280.00, plus interest at the rate of 6% per year from February 9, 1967, until paid. The court reached this figure by deducting $720.00, the amount paid to Meadows and Continental on the Black Hardware notes, from the face value of these notes.

The statute authorizes an action in equity to recover the consideration paid by the person buying the security. It also authorizes an action for damages in the event such person had disposed of the securities. The intent of the legislation was to authorize an action for recission under applicable rules of equity. This statutory cause of action is vested in Bierschwale and his associates, and not in Meadows and Continental, who can recover only on the findings of fraudulent misrepresentations. The cause of action is against Oakes alone. The same equitable rules heretofore discussed authorize tracing the proceeds of the sale of the property received by Oakes as consideration for his sale of the notes.

Meadows agreed to accept as his commission notes payable over a period of time secured by a second lien on corporate stock and having a face value of $24,000.00. There was evidence that the actual cash value of such notes would usually be less than face value. The jury found that the loss suffered by Meadows and Continental by their acceptance of the notes in payment of the commission was $14,260.00. There is evidence to support this finding. We

cannot say that an agreement to pay $24,000.00 in notes of the sort contemplated by the parties is equivalent to an agreement to pay $24,000.00 in cash. The trial court erred in finding as a matter of law that Meadows and Continental were damaged in the amount of $23,280.00. The trial court should have entered judgment against Oakes and in favor of Meadows in the sum of $14,260.00. Meadows had no interest in the Memorial Woods Apartments either equitable or contractual as a foundation for impressing a constructive trust or equitable lien upon the proceeds realized from the sale to Goldman.

■ The trial court did not err in awarding judgment to Bierschwale for loss of use of Goldman notes 1—7 and 17—24, which were pledged by Oakes to Bank of Texas and T. D. Smith, Trustee. The judgment was rendered on equitable principles based on the theory of restitution. Bierschwale was awarded recovery based on the value of the property at the time it was sold to Goldman, not its value at the time of the sale to Oakes. He was awarded the proceeds of the sale of the property to prevent the unjust enrichment of Oakes. The award of interest is restitutionary since Oakes received the benefit of the use of those notes.

The liability of United Properties, Inc., can be upheld on the basis that the corporation acquired the property with full knowledge of all facts known to Oakes. The question of whether it was the alter ego of Herbert C. Oakes is immaterial to the issues in this case.

■ No issue of fact was raised by the evidence as to inexcusable delay on the part of plaintiffs in exerting and protecting their right and claim to the Memorial Woods Apartments or the proceeds of the sale thereof. It appears that soon after the default in the payment of the Black Hardware notes an attorney was employed and that suit was filed about three months after such default. There is no evidence of injury suffered by Oakes or United

Properties, Inc., resulting from such delay. The requested special issue was not in proper form. No issue was requested relative to injury suffered by Oakes. The Securities Act provides a limitation period of three years for institution of a suit under Subsection A(1) of Section 33, Art. 581, V.A.C.S. Point of Error Number Twenty-Five is without merit. Ingram v. Abbott, 14 Tex.Civ.App. 583, 38 S.W. 626 (1896); G. C. & S. F. Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958); Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688 (1938).

■ Oakes complains of the action of the trial court in overruling his motion for mistrial based on what he contends were improper remarks made by counsel for Bierschwale to certain members of the jury. These were casual remarks in the nature of pleasantries. While the making of such remarks may be a practice which the trial courts should discourage, in this instance we conclude that no prejudice resulted to Mr. Oakes.

■ Oakes complains of the action of the trial court in denying his request to offer, after the jury verdict was returned, additional evidence concerning expenditures for debt reduction, air conditioning equipment, painting and the like in connection with his operation of the Memorial Woods Apartments. He testified that during his operation of the apartments he achieved a positive cash flow and made a profit from the operation Rule 270, T.R.C.P., authorizes the trial court to permit additional evidence to be offered "where it clearly appears to be necessary to the due administration of justice." The trial court cannot reopen under the Rule in a jury case unless the evidence tendered is conclusive in nature and would leave no issue for decision by a jury. Texas Employers' Insurance Ass'n v. Elder, 155 Tex. 27, 282 S.W.2d 371 (1955). The question of whether the expenditures were paid for out of profits would have become material. An accounting would have been required which might well have raised disputed is-

sues of fact. The trial court did not abuse his discretion in denying the motion to reopen.

### Appeal of Bierschwale and Associates

This suit to impress a constructive trust on the Goldman notes was filed on August 15, 1967. An order was entered on May 27, 1968, requiring Goldman to pay all proceeds into the registry of the court. Oakes pledged notes 1—7 to Smith, Trustee, on March 4, 1968. On October 23, 1967, Oakes executed an unsecured promissory note in the principal amount of $29,240.00 payable to Bank of Texas. Subsequently during the same month Oakes pledged eight of the notes as security for this note by endorsement without the execution of a pledge agreement.

Appellant has admitted that Smith, Trustee, occupies the position of a holder in due course. He admits that Bank of Texas is a holder for value. The jury found that Bank of Texas acquired the notes in good faith, but failed to find that the Bank acquired the notes without prior notice of any claim to the notes on the part of plaintiffs. Section 3.302 of the Uniform Commercial Code, V.T.C.A. defines a holder in due course as one who takes an instrument for value, in good faith, and "without notice . . . of any . . . claim to it on the part of any person." The trial court set aside the jury finding on notice.

There is evidence that Mr. West, a senior vice-president of the Bank of Texas, who handled the accounts of Mr. Oakes and Mr. Bierschwale, was fully advised of the transactions by which Mr. Oakes gained control of Black Hardware. He knew the financial condition of Black Hardware, and was regularly furnished financial reports. He was acquainted with the details of the transaction by which Mr. Oakes sold control of Black Hardware to Shoffner, Davis and Goyen. He required that the lien securing the notes received by Oakes be subordinated to the lien of the bank. He knew that Bierschwale was considering the exchange of the Memorial Woods Apartments for some of the Black Hardware notes. He advised Mr. Bierschwale that the bank had a prior lien on the security for those notes and that Mr. Oakes was "trying to peddle them all over town." He was advised that the exchange was made and that the notes received by Bierschwale were in default. He knew that Bierschwale had hired an attorney to attempt collection of the notes.

There is no evidence that he knew a lawsuit had been filed before Oakes pledged the Goldman notes as security for his loan at the bank. There is no evidence that Mr. West knew that Bierschwale contended that he was induced to accept the notes by false representations or that there had been a violation of the Securities Act, or that, prior to the pledge, anyone had advised him that Bierschwale had a claim against the Goldman notes. The bank objected to the submission of Special Issue No. 17 on the ground that there was no evidence to raise the issue. The trial court properly disregarded the answer made by the jury.

■ "Notice" under Uniform Commerce Code, Section 3.302, means notice of a claim to the particular instrument transferred. It does not mean notice of the transferor's insolvency or notice of claims against the transferor. Bowling Green, Inc. v. State Street B. & T. Co. of Boston, 307 F.Supp. 648 (D.C.Mass.1969), aff'd 425 F.2d 81 (1st Cir. 1970); Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701 (1936).

On May 27, 1968, Dr. Goldman was ordered to make all payments on the notes into the registry of the court. It appears that prior to that date all payments were made directly to Mr. Oakes. The Bank of Texas intervened in the case on November 28, 1969. Oakes defaulted on the note in April, 1970. On June 1, 1970, Oakes defaulted on the note to Smith, Trustee.

The pledge agreement between Smith, Trustee, and United Properties, Inc., provides that United Properties, Inc., "shall

have . . . the right to collect, receive and receipt for payments hereafter made on the collateral notes" so long as there is no default authorizing the maturity of the whole of the indebtedness. It is not contended that there was such a default prior to June 1, 1970.

Bierschwale contends that payments made into the registry of the court on the notes pledged to Bank of Texas prior to the assertion of its claim by the Bank of Texas on November 28, 1969, and on the notes pledged to Smith, Trustee, prior to default on June 1, 1970, were impressed with a constructive trust in his favor, and that the trial court erred in failing to award them to him.

Section 9.306, U.C.C., provides:

"(a) 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of . . .

"(b) Except where this chapter otherwise provides, a security interest . . . continues in any identifiable proceeds including collections received by the debtor."

Section 9.302, U.C.C., provides:

"(a) A financing statement must be filed to perfect all security interests except the following:

(2) a security interest . . . in proceeds for a 10 day period under Section 9.306; . . . "

Section 9.301, U.C.C., provides:

"(a) . . . An unperfected security interest is subordinate to the right of

"(2) a person who becomes a lien creditor without knowledge of the security interests and before it is perfected;

"(c) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment,

and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment . . . "

Section 9.203, U.C.C., provides:

"(a) . . . a security interest is not enforceable against the debtor or third party unless

"(1) the collateral is in the possession of the secured party; or (2) the debtor has signed a security agreement which contains a description of the collateral . . . In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character."

Both the Bank and Smith, Trustee, held perfected security interests in the Goldman notes by virtue of possession. Smith, Trustee, also had a security agreement duly filed which described the notes, but did not describe "proceeds".

By reason of Section 9.306 a security interest for the benefit of Smith and the Bank continued in collections received by Oakes, and in proceeds deposited in the registry of the court, but in the absence of a financing statement describing "proceeds," by virtue of Section 9.302, the security interest was not a perfected security interest.

The payments made into the registry of the court did not constitute collateral "in the possession of the secured party" since neither the Bank nor Smith, Trustee, had the right to collect these payments prior to the order requiring payment into the registry. By reason of § 9.203 the security interest of the Bank and of Smith, Trustee, could not be enforced against "the debtor or third party".

Bierschwale occupies the position of a lien creditor, whose rights are superior to those holding an unperfected security interest. § 9.301, U.C.C. One asserting ownership of a chattel by reason of a constructive trust falls within the meaning

properly to be ascribed to the words "or the like" found in § 9.301(c). His equitable right arose prior to those of the Bank and Smith, Trustee, and was acquired without knowledge of their rights. The trial court erred in failing to award to Bierschwale and his associates title to the payments made into the registry of the court on Goldman notes 17—24 prior to November 28, 1970, and on Goldman notes 1—7 prior to June 1, 1970.

By reason of our decision on the issues raised by the appeals in this case, it is necessary that the judgment rendered by the trial court be corrected in the following particulars:

(1) James Meadows and Continental Mortgage and Realty Company shall have judgment against Herbert C. Oakes in the sum of $14,260.00, together with interest at the rate of 6% per annum from date of judgment until paid;

(2) The judgment awarded Roy W. Bierschwale, Weldon E. Countryman, and Eli David Philley should be corrected to properly credit Herbert C. Oakes and United Properties, Inc. with the amount collected by them on the Goyen, Shoffner, Davis notes, including interest as awarded by the court;

(3) The judgment should divest from Herbert C. Oakes and United Properties, Inc. and vest into Roy W. Bierschwale, Weldon E. Countryman, and Eli David Philley ownership of the entire interest in the Goldman notes, rather than a 79.67% interest;

(4) Appropriate change should be made in the judgment to decrease the amount of the payment to T. D. Smith, Trustee, and the Bank of Texas from the funds held in the registry of the court, which will necessitate a change in amount due to each from Herbert C. Oakes secured by Goldman notes;

(5) The awards to Roy W. Bierschwale, Weldon E. Countryman and Eli David Philley for loss of interest in notes 1—7

and 17—24 must be reduced to reflect the increased amount awarded them from the registry of the court;

(6) The judgment in favor of Bierschwale, Countryman and Philley in the sum of $42,279.70 must be corrected to reflect the increased interest which they have received in notes 8—16 and the funds in the registry of the court and should be decreased by the award to James Meadows and Continental Mortgage and Realty Company, Inc;

(7) That portion of the judgment striking the "without recourse" endorsement of Herbert C. Oakes on the Shoffner, Goyen and Davis notes should be eliminated.

The judgment of the trial court is reversed in part, modified, and remanded to the trial court with instructions to enter judgment in accordance with this opinion.

On Motions for Rehearing

Appellants have called to our attention an error found in paragraph (5) of the instructions for retrial contained in our original opinion. This paragraph is disapproved and the following instruction is substituted:

"The awards to Roy W. Bierschwale, Weldon E. Countryman and Eli David Philley for loss of interest in Notes 1—7 and 17—24 must be corrected to reflect the increased interest which they have received in said notes by reason of the elimination of the Meadows-Continental title and the increased amounts of the indebtednesses owing to the respective lien holders occasioned by the award to Bierschwale, Countryman and Philley of payments from the registry of the court previously awarded to the respective lien holders, T. D. Smith, Trustee, et al, and the Bank of Texas."

In all other respects the motion for rehearing is overruled. The motions for rehearing of all of the other parties are overruled.